Argued April 21, affirmed June 2, 1960

# WARREN *v.* MARION COUNTY ET AL
### 353 P. 2d 257

*Thomas B. Brand,* Salem, argued the cause and submitted a brief for appellant.

*Catherine Zorn,* Assistant Attorney General, Salem, and *C. L. Marsters,* Assistant District Attorney, Salem, argued the cause for respondents. With them on the briefs were Robert Y. Thornton, Attorney General, Salem, and Hattie J. Bratzel, District Attorney, Salem.

Before McALLISTER, Chief Justice, and ROSSMAN, WARNER, PERRY, SLOAN, O'CONNELL and GOODWIN, Justices.

O'CONNELL, J.

This is a suit brought under the Uniform Declaratory Judgments Act (ORS ch 28) seeking a judgment declaring that the building code ordinance of Marion county is unconstitutional and void and that plaintiff, a building contractor, is not required to comply with its terms.

The complaint alleges that the defendant county's

insistence that plaintiff comply with the purported ordinance subjects plaintiff to irreparable loss, and that plaintiff has no adequate remedy at law. The complaint then sets forth the various grounds upon which plaintiff relies in attacking the ordinance. There being no issues of fact the matter was heard on briefs and argument only. The trial court held that the ordinance was constitutional and ordered the plaintiff to comply with its provisions.

The ordinance in question was enacted pursuant to an enabling act, Oregon Laws 1955, ch 439, § 5, which is now compiled as ORS 215.108. The enabling act itself is attacked by plaintiff on three grounds: (1) that it delegates the authority to promulgate regulations without providing for any definite standards and thus attempts to delegate legislative power in violation of Article II, § 1 and Article IV, § 1 of the Oregon Constitution; and (2) that § 5 of chapter 439 embraces more than one subject and is, therefore, in violation of Article IV, § 20 of the Oregon Constitution; and (3) that the establishment of a building code, dealt with in § 5 is a subject not expressed in the title to the act and is, therefore, in violation of Article IV, § 20 of the Oregon Constitution.

We shall address our attention first to the contention that the act constitutes an invalid delegation of legislative power. The section subject to attack on this score is ORS 215.108, which provides as follows:

> "*215.108 Building code ordinance.* (1) The governing body of a county may adopt ordinances establishing building codes for the county, or any portion thereof, in conformity with the standards set forth in ORS 215.104. Such ordinances may adopt by reference published building codes, or any portions thereof, which conform to such standards,

and a certified copy of such code or codes shall be filed with the county clerk of said county.

"(2) Any governing body of a county which adopts ordinances establishing building codes shall by ordinance provide procedures for appeals from decisions made under the authority of the ordinances establishing building codes."

ORS 215.104 referred to in ORS 215.108 contains no standards which would have any application in the enactment of a building code ordinance. However, ORS 215.055 does contain such standards. ORS 215.055 reads as follows:

"*215.055 Standards for development pattern.* The development pattern and regulations and ordinances adopted by the commission or the governing body of the county under ORS 215.010 to 215.190 shall be designed to promote the public health, safety and general welfare. The commission and the governing body of the county shall give reasonable consideration, among other things, to the character of the areas involved, the buildings, structures and uses presently in the areas, the peculiar suitability or adaptability of the areas for particular uses, the needs of agriculture, industry and business in the future growth of the areas, the need for healthful surroundings and conditions, the conservation of property values and the direction and trend of building development in the areas. Provisions relating to height, bulk and construction of buildings and the areas of yards, courts and other open spaces shall be uniform for each class of buildings throughout each zoning area included in the development pattern. Provisions relating to the construction, location and use of buildings or structures shall be designed to secure safety from fire and other dangers and to insure sanitary conditions and adequate light, air and access."

■ An examination of the history of this legislation reveals that a clerical error was made in the course

of amending the bill which eventually became Oregon Laws 1955, ch 439. In that process one of the sections of the bill was omitted and the sections were then renumbered. However, the reference in that part of the bill which is now ORS 215.108 to the section relating to standards was not changed when the latter section was renumbered. The error is patent in the legislative record. This being so, we are free to make the revision necessary to express the real legislative purpose. *State v. Lermeny,* 213 Or 574, 326 P2d 768 (1958); *Kempien v. Board of Com'rs. of Ramsey County,* 160 Minn 69, 199 NW 442 (1924); 2 Sutherland, Statutory Construction (3rd ed), § 4925. We hold, therefore, that ORS 215.108 must be read to make reference to ORS 215.055 for the applicable standards.

Plaintiff contends that even though ORS 215.108 is judicially revised so as to make reference to ORS 215.055, the statutes still do not contain adequate standards. It is argued that ORS 215.055 relates to standards for a development pattern of land use and contains no guideposts which would have any relevancy in delineating a building code. It must be admitted that the objectives set forth in ORS 215.055 are those which relate principally to land use development rather than to the structural characteristics of the buildings in the regulated area. It must also be admitted that the standards contained in ORS 215.055 are stated in general terms. The question is: Must the legislature be more specific if it is to keep the delegation within constitutional bounds. We think not.

■ There is no constitutional requirement that all delegation of legislative power must be accompanied by a statement of standards circumscribing its exercise. It is true that a contrary view has frequently been expressed in the adjudicated cases, particularly

the earlier ones, but the position taken in such cases is not defensible. It is now apparent that the requirement of expressed standards has, in most instances, been little more than a judicial fetish for legislative language, the recitation of which provides no additional safeguards to persons affected by the exercise of the delegated authority. 1 Davis, Administrative Law Treatise, §§ 2.04, 2.05; Forkosch, Administrative Law, § 84. Thus, we have learned that it is of little or no significance in the administration of a delegated power that the statute which generated it stated the permissible limits of its exercise in terms of such abstractions as "public convenience, interest or necessity" or "unjust or unreasonable," or "for the public health, safety, and morals" and similar phrases accepted as satisfying the standards requirement. 1 Davis, Administrative Law Treatise, §§ 2.03-2.05; Forkosch, Administrative Law, §§ 83, 84.

■ As pointed out in Davis on Administrative Law, the important consideration is not whether the statute delegating the power expresses *standards,* but whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action. 1 Davis, Administrative Law Treatise, §§ 2.10, 2.15, 7.20. See also: *Peninsula Corporation v. United States,* 60 F Supp 174 (D.C.Cir 1945); *Heath v. Mayor and City Council of Baltimore,* 187 Md 296, 49 A2d 799 (1946).

In testing the statute for the adequacy of such safeguards it is important to consider the character of administrative action which the statute authorizes. The statute here authorizes the establishment of building codes, including the adoption by reference of published codes such as the Uniform Building Code which the defendant adopted in modified form. Such codes

are in themselves a statement of specific standards for the construction of buildings. The administrative official charged with the duty of enforcing a building code ordinance is called upon to decide whether the specifications set out in the code have been met in the construction of a particular building. His action can, therefore, be tested against the specific description of adequate construction set out in the building code. The statute then requires that the county set up appeal procedures so that persons dissatisfied with the building inspector's action in ruling upon the suitability of materials or construction may have that action reviewed by a separate administrative body. What further safeguards are needed to protect persons subjected to regulation under such a code?

We believe that the appeals procedure required by ORS 215.108 (2) provided a sufficient safeguard to persons wishing to contest administrative action in the enforcement of the code. Plaintiff has not mentioned the standards which he thinks would satisfy the requirement for an adequate statute. We doubt that any standards which he could suggest for inclusion in the statute would make any clearer the scope of the delegated power or contribute materially to the protection of a citizen against unwarranted administrative action. We hold that ORS 215.108 constitutes a valid delegation of legislative power.

Plaintiff next attacks the building code on the ground that it fails to provide any procedure for appeals as required by the enabling act. ORS 215.108 (2) provides as follows:

"*215.108 Building code ordinance.* (1) The governing body of a county may adopt ordinances establishing building codes for the county, or any portion thereof, in conformity with the standards

set forth in ORS 215.104. Such ordinances may adopt by reference published building codes, or any portions thereof, which conform to such standards, and a certified copy of such code or codes shall be filed with the county clerk of said county.

"(2) Any governing body of a county which adopts ordinances establishing building codes shall by ordinance provide procedures for appeals from decisions made under the authority of the ordinances establishing building codes."

The Marion county building code ordinance adopted by reference Volume I of the Uniform Building Code (1955 ed) with certain amendments. Section 204 of the Uniform Building Code relating to appeals procedure was adopted as amended by the ordinance. The amended section reads as follows:

" 'Section 204. BOARD OF EXAMINERS AND APPEALS. In order to determine the suitability of alternate materials and construction and to permit interpretations of the provisions of this code, there shall be and is hereby created a Board of Examiners and Appeals, consisting of six (6) members, who are qualified by experience and training to pass on matters pertaining to building construction. Two members shall be practicing registered architects, two competent general contractors and two practicing registered professional engineers, each of whom shall have had at least ten years experience as an architect, contractor, or engineer. A quorum for any meeting shall be three or more members. If three only, one shall be a contractor member, one engineer member, and one an architect member. The building inspector shall be an ex-officio member and shall act as secretary to the Board. The Board of Examiners & Appeals shall be appointed by the mayor[1] and shall hold office for a term of one year, unless sooner removed

[1] An interpretation section of the ordinance provides in effect that the word "mayor" shall be construed to mean "county judge."

for cause. The board shall adopt reasonable rules and regulations for conducting its investigations & shall render all decisions & findings in writing to the building inspector with a duplicate copy to the appellant and may recommend to the Common Council such new legislation as is consistent therewith. If any member has a working interest in the matter before the appeal board, he may attend and enter in the discussion but will not be permitted to vote.' "

Plaintiff contends that the ordinance does not comply with the requirements set forth in ORS 215.108 (2) in that the ordinance makes no provision for times when the appeal board must meet to hear complaints, that it prescribes no time within which an appellant must appeal to the board, and generally fails to set out the procedures necessary to present a case to it for determination.

The Uniform Building Code from which this section in substance was adopted contains no other sections relating to the procedures to be followed in passing upon matters pertaining to building construction under the code. Apparently, the draftsman of the Uniform Code regarded the section as sufficient to meet the minimum constitutional requirement for procedural due process. We must determine whether that minimum has been met.

■ The enabling statute, ORS 215.108 (2), phrases the delegation of authority in general terms—the county "shall by ordinance provide procedures for appeals." The plaintiff interprets this direction to require the ordinance itself to spell out the details as to time of hearing, time within which appeals may be taken and other procedural matters, apparently on the theory that the person aggrieved must be able to de-

termine from a reading of the ordinance what specific course of action he must pursue in order to protect his interest. We do not interpret the statute to demand such specificity and we are of the opinion that due process does not require it. *Paulson v. Portland,* 149 US 30, 13 S Ct 750, 37 L Ed 637 (1892), affirming *Paulson v. City of Portland,* 16 Or 450, 19 P 450, 1 LRA 673 (1888); *Manufacturers' Light & Heat Co. v. Ott,* 215 F 940 (N.D., W. Va. 1914).

The statute, by requiring that provision must be made for appeal procedures, indicates clearly enough that a hearing must be afforded persons who are not satisfied with the initial administrative determination. It is not unlikely that the statute was drafted with knowledge that the Uniform Building Code provided for such appeal procedures. At any rate, it is reasonable to assume that the legislature intended that the governing body of the county would set up an administrative board to carry out the quasi-judicial function of hearing the complaints of those appealing from the action of the officer charged with inspecting structures covered by the building code. This the ordinance clearly does and to this extent, at least, the ordinance followed the command of the statute that appeal procedures must be provided. The ordinance, however, leaves to the board the task of working out the details of its own procedure by providing that the board "shall adopt reasonable rules and regulations for conducting its investigations."

Can the county thus subdelegate the function of establishing necessary procedural safeguards to assure the constitutional requirement of due process? We think that it can. First, we do not regard it as essential that the ordinance or the rules and regulations adopted by the board set out in advance the times for meet-

ings, or the time within which an appeal may be taken to the board. An aggrieved person could address his complaint to the board at any time. Having done so, the board must then provide adequate procedures to hear the applicant's case. The provision of the ordinance requiring the adoption of reasonable rules and regulations for conducting investigations makes it mandatory upon the board to adopt procedural rules of some kind in order to carry out its quasi-judicial function. Such rules would require the board to serve notice upon persons affected by its action, of time and place for hearing and to provide a hearing appropriate to the character of regulation which is being imposed upon the applicant. 1 Davis, Administrative Law Treatise, §§ 7.01, 7.02, 7.10. The record in the present case does not disclose whether or not the board established such procedural rules and regulations. The plaintiff, relying upon the theory that the ordinance was fatally defective, did not deem it essential to present evidence as to whether there were procedural rules which could have been followed by him in presenting his grievance.

■ We hold that the governing body of the county may delegate the function of establishing the necessary rules or procedure for cases appealed to the board created by it. See, Forkosch, Administrative Law, § 86. In the absence of proof to the contrary, we are entitled to presume that the board has carried out the mandate of the ordinance and has adopted "rules and regulations for conducting its investigations." *United States v. Chemical Foundation, Inc.,* 272 US 1, 47 S Ct 1, 71 L Ed 131 (1926) ; *Peninsula Corporation v. United States,* 60 F Supp 174 (D.C.Cir 1945).

■ In reaching our conclusion on this phase of the case we have made the assumption that the function

of prescribing the essentials of notice and hearing delegated to the governing body of the county could be subdelegated to the board of appeals. Although the subdelegation of power may, under certain circumstances, be beyond the scope of the authority first delegated, or invalid on constitutional grounds, there is no general legal proscription against the retransmission of authority by government agencies. 1 Davis, Administrative Law Treatise, §§ 9.01, 9.06, 9.07. The authority to subdelegate need not be expressed in the statute and may be implied if there is a reasonable basis for such implication. Forkosch, Administrative Law, § 86. In the creation of an administrative board it is not necessary to prescribe the specific procedure under which it must operate. *Peninsula Corporation v. United States,* supra; *Whittle v. Nesmith,* 255 Ala 193, 51 So2d 6 (1951); *State v. Terry,* 148 A2d 102 (Del 1959); *State v. Louisiana State Boxing Commission,* 163 La 418, 112 So 31 (1927). The agency may be regarded as having such implied powers as are necessary to carry out the powers expressly granted. *California Drive-In Restaurant Ass'n. v. Clark,* 22 Cal2d 287, 140 P2d 657, 147 ALR 1028 (1943); *City of Wichita v. Wyman,* 158 Kan 709, 150 P2d 154 (1944); *Mississippi Public Service Commission v. Chambers,* 235 Miss 133, 108 So2d 550 (1959); *Pennsylvania Labor Relations Board v. Yellow Cab & Bus Co.,* 53 Pa D & C 600 (1945); *State v. Great Northern Ry. Co.,* 68 Wash 257, 123 P 8 (1912). In the instant case the power granted to the board to make "reasonable rules and regulations for conducting its investigations" may be regarded as including the power to specify the procedures governing appeals to it. If the board fails to provide adequate procedures, the person aggrieved may get relief from the courts, but

the board's inaction does not render the ordinance invalid as contended by the plaintiff. See *Stone v. Cray,* 89 N H 483, 200 A 517 (1938).

It is next contended that ORS 215.108 and any ordinances enacted pursuant thereto are unconstitutional on the ground that the section was a part of an act (Oregon Laws 1955, ch 439) which embraced more than one subject and, further, that the subject dealt with in ORS 215.108 was not expressed in the title to the act, all of which, it is argued, violates Article IV, § 20 of the Oregon Constitution.

We shall first consider the contention that the subject is not embraced in the title. The title to Oregon Laws 1955, ch 439 was as follows:

"Relating to county planning; creating new provisions; amending ORS 215.050, 215.150 and 215.420; and providing penalties."

Plaintiff argues that the words "county planning" in the title are not sufficiently broad to embrace the provision enabling the county to enact an ordinance establishing a building code.

The constitutional restriction on titles of legislative acts was designed to prevent the use of the title as a means of deceiving members of the legislature and other interested persons as the bill moved through the legislative process. The restriction was intended to assure those who could not examine the body of the act itself that the act did not deal with more than its title disclosed. See an excellent treatment of the subject of titles of acts in "The Constitutional Restriction on Titles of Acts in Oregon" by Walter Probert in 31 Or L Rev 111 (1951).

Our cases repeatedly state that Article IV, § 20 must be liberally construed; the insufficiency of the

title must be "plain and manifest," "palpable and clear." *Foeller v. Housing Authority of Portland,* 198 Or 205, 256 P2d 752 (1953); *Adm. Vets. Affairs v. U. S. Nat. Bank,* 191 Or 203, 229 P2d 276 (1951); *Pacific Elevator Co. v. Portland,* 65 Or 349, 133 P 72, 46 LRA NS 363 (1913); *State of Oregon v. Shaw,* 22 Or 287, 29 P 1028 (1892); Probert, op cit supra, 114.

■ Basically, the question is one of semantics; specifically, the problem of determining whether the idea of a building code and its enactment is a referent of the expression "county planning." Whether it is or not will depend upon the meaning which the expression has come to have through usage. The word "planning" in such expressions as "county planning," "city planning," "regional planning" and the like is frequently used to embrace all of the problems which relate to the integration of land use, including the orderly development of the community, zoning, traffic, and the regulation of the location, construction and use of buildings, to mention a few. In the discussion of planning in this sense it is not uncommon to find as a part of the subject matter dealt with, the enactment or administration of building codes. See for example, LXII The American City 77; LVI Ibid. 113. Judicial recognition of the relationship between county planning and the enactment of a building code is found in *Vanderburgh County v. Sanders,* 218 Ind 43, 30 NE2d 713, 131 ALR 1048 (1940). The headnote appearing in the ALR report of the case accurately summarizes the holding on this aspect of the case:

> "1. Authority to adopt a building code requiring the obtaining of permits for contemplated buildings and the payment of a reasonable fee therefor is conferred upon a board of county commissioners

by a statute providing for the appointment of a county planning commission with the view to development of the county as a place of residence according to a master plan, and empowering it to prepare and submit to the board of county commissioners drafts of ordinances for the purpose of carrying out the master plan, or of any part thereof, including zoning or land use regulations."

The court's recognition of a building code as impliedly included in legislation calling for the creation of a master plan by a planning commission reflects, we believe, a not uncommon understanding of the scope of the word "planning" in this context. We think that the title afforded sufficient warning of the subject of building codes dealt with in the body of the act and, therefore, we hold that the act does not violate Article IV, § 20 of the Oregon Constitution.

As a corollary argument defendant asserts that the act also violates the constitutional restriction against including more than one subject in a single act. It is to be noted that Article IV, § 20 permits "matters properly connected" with the subject of the act. As we have already stated, the subject of building codes is related to the subject of county planning. We hold that it is "properly connected" within the meaning of the constitutional provision.

The validity of the building code ordinance is attacked on the ground that it was not legally adopted. It is argued that the question of whether the ordinance should be adopted must be submitted to the legal voters of the county in accordance with ORS 215.120. That section provides in part as follows:

"* * * (1) The governing body of the county may adopt ordinances submitted under ORS 215.110 by the commission.

"(2) Prior to the enactment of any zoning or land use ordinances submitted under ORS 215.110, the county court or board of county commissioners shall refer to the legal voters of the county at a general or special election called for that purpose the question 'Shall the county court or board of county commissioners be authorized to enact zoning and land use regulations?' "

The commission referred to in ORS 215.120 is the county planning commission. Under ORS 215.110 it is authorized to prepare and submit to the governing body of the county drafts of ordinances "for the purpose of carrying out the development pattern" of the county, including the following purposes which are enumerated in the section:

"* * * * *

"(1) Zoning or land use regulations,
"(2) The making of official maps and the preservation of the integrity thereof,
"(3) Procedure for appeals from decisions made under the authority of such ordinances, and
"(4) Regulations for the conservation of the natural resources of the county."

It is stipulated that there has been no approval by the voters of Marion county of the building code ordinance. Whether such approval is necessary is purely a matter of statutory construction. ORS 215.120 requires voter approval as a condition only to the enactment of "any zoning or land use ordinances submitted under ORS 215.110." Now it will be noted that although ORS 215.110 enumerates four separate purposes which are the proper subject for the commission's effort in drafting ordinances, ORS 215.120 selects but one of these, namely, "zoning or land use regulations" as the subject requiring submission to the voters before enactment. It is clear from this that

the legislature was concerned with insuring public consent only with respect to a part of the ordinances which the governing body of the county would enact. The question is whether a building code ordinance was intended to be included within the term "zoning or land use ordinances." Throughout chapter 215 the expression "zoning or land use ordinances" appears. The provisions relating to the building code are dealt with in a separate section of the act. ORS 215.108. Now, as a part of the building code section, subsection (2) provides that any governing body of a county which adopts ordinances establishing building codes shall by ordinance "provide procedures for appeals." This, it has been noted above, was one of the subjects enumerated in ORS 215.110. Here then was a matter relating to building codes which was in the list of subjects out of which the legislature selected "zoning or land use control" regulations as the only subject requiring voter approval. It is evident, then, that a part at least of the matter germane to building codes was not deemed of sufficient public concern as to require a vote of the people for its enactment.

We are convinced that the subject of the adoption of building codes was not intended to be conditional upon submission to the people for approval. In addition to the evidence of the separate treatment of building code ordinances in the act, there is an additional ground which leads us to the conclusion that such ordinances were not intended to be included in ORS 215.120. The question of whether zoning or land use controls should be imposed upon an area within the county is a matter of very serious concern to the property owners who would be affected by such regulation. On the other hand, building code regulations involve less serious restrictions upon the property

owners' use, the standards insisted upon being for the most part simply those which relate to the details of building structure. Such regulations are almost universally adopted whenever a community develops. They are, therefore, accepted by the public as a usual incidence of community living as contrasted with the rather drastic innovation in the control of property felt when an area in the county has land use restrictions imposed upon it. It seems likely that the legislature, in creating chapter 215, had these distinctions in mind and felt that although zoning and land use controls should be adopted only through express consent of the people, the adoption of a building code could be left to the wisdom of the governing board of the county. We so interpret the statute.

Finally, it is argued that the building code ordinance violates the equal privileges and immunities clause of the Oregon Constitution, Article I, § 20, and that it also violates that part of Article IV, § 23 which prohibits the legislature from enacting special or local laws "for the punishment of Crimes, and Misdemeanors."

The ordinance adopting the building code made the code applicable only to the unincorporated areas of Marion county lying west of the Willamette meridian, excluding, however, "farm dwellings or agricultural buildings and structures on lands used exclusively for grazing, agricultural, horticultural and timber growing purposes." It is urged that the application of the building code ordinance to the unincorporated area lying west of the Willamette meridian and not to the unincorporated area lying east of the Willamette meridian constitutes an unlawful discrimination against those persons living and doing business west of the meridian. It is pointed out that the ordinance

excludes from its operation incorporated areas and, further, that it is not operative in unincorporated areas as to land used exclusively for agricultural, horticultural, grazing and timber growing purposes. By thus limiting the operation of the ordinance, it is said that there is left no reasonable ground for distinguishing land use east of the meridian from land use west of the meridian for the purpose of regulating the structure of buildings.

The ordinance must, of course, rest upon a reasonable classification. *State of Oregon v. Pirkey,* 203 Or 697, 281 P2d 698 (1955); *Namba v. McCourt and Nuener,* 185 Or 579, 204 P2d 569 (1949); *Ex parte Northrup,* 41 Or 489, 69 P 445 (1902). Is there a reasonable basis for classification in the present case? Our attention is called to the fact that the Willamette meridian runs north and south at a point just east of Stayton, Oregon and that the area east of Stayton is mountainous and sparsely populated, while the area west of Stayton lies in the Willamette valley and is relatively thickly populated. A reasonable distinction can be drawn between the need for building structure regulation in various areas on the basis of the population in those areas. This is so obvious that we shall not burden the opinion with citations. This court represents a coordinate branch of government. It does not have supervising powers over the policy determinations of legislative bodies. We have no right to inquire as to the wisdom of the governing body of Marion county in making a territorial classification. There is a reasonable basis for the classification and it is, therefore, free from constitutional objection. *State v. Hunter,* 208 Or 282, 300 P2d 455 (1956); *Mallatt v. Luihn,* 206 Or 678, 294 P2d 871 (1956); *Thompson v. Dickson,* 202 Or 394, 275 P2d 749 (1954); *State*

*ex rel Veatch v. Franklin,* 163 Or 500, 98 P2d 724 (1940); *Kroner v. City of Portland,* 116 Or 141, 240 P 536 (1925).

 The provision for the impostion of penalties in the building code ordinance does not violate Article IV, § 23. It is established that a law containing a penalty provision which is applicable only to a certain class of persons is not objectionable if the law is based upon a reasonable classification. *State v. Savage,* 96 Or 53, 184 P 567, 189 P 427 (1919); *Fouts v. Hood River,* 46 Or 492, 81 P 370, 1 LRA NS 483 (1905); *White v. Mears,* 44 Or 215, 74 P 931 (1904); *Ex parte Northrup,* supra. But cf., *Lewis v. Varney,* 85 Or 400, 167 P 271 (1917). The penalty provision "is merely incident to the act," *State v. Savage,* 96 Or 53, 64, 184 P 567 (1920), and since the act itself is valid, based as it is upon a reasonable classification, the law thus created "may be enforced by the punishment of a violation thereof." *State v. Savage,* supra at page 64.

The judgment of the lower court is affirmed.