Argued and submitted February 7, petitioners' challenges dismissed April 26, 1990

COMMITTEE IN OPPOSITION TO
THE PRISON IN MALHEUR COUNTY et al,
*Petitioners,*

*v.*

OREGON EMERGENCY CORRECTIONS
FACILITY SITING AUTHORITY et al,
*Respondents.*

(SC S36626 (Control))

COMMITTEE IN OPPOSITION TO
THE PRISON IN MALHEUR COUNTY et al,
*Petitioners,*

*v.*

GOLDSCHMIDT et al,
*Respondents.*

(SC S36641)
(Cases Consolidated)

792 P2d 1203

Allen L. Johnson, Eugene, argued the cause and filed the briefs for petitioners. With him on the opening brief were John Shurts, Eugene, and Bill Van Atta, Ontario.

Michael D. Reynolds, Assistant Attorney General, Salem, argued the cause for respondents. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

JONES, J.

**JONES, J.**

Petitioners challenge the siting of a proposed prison in their community. This court has direct review of the consolidated challenges to the siting decisions of the Oregon Emergency Corrections Facility Siting Authority (the Siting Authority) and the Governor. *See* Or Laws 1989, ch 789, § 10(2). Petitioners' challenges to those decisions are dismissed.

## FACTS

The following chronology generally replicates the sequence of events described in the petitions for review:

On June 2, 1989, Oregon Laws 1989, chapter 262 (HB 3496), took effect under an emergency clause. That statute authorized the Department of Corrections (the Department) to (1) "establish by rule" mandatory and desirable criteria for the location of a medium security prison facility; (2) identify potential sites for the facility based on the criteria established; and (3) perform architectural, engineering, and impact analyses of potential sites to determine their suitability for the facility. *Id.* at § 2. On June 8, the Department adopted temporary rules establishing mandatory and desirable criteria for a facility site.

On July 18, 1989, the Department issued a report narrowing a list of 96 potential sites to 14, including the subject site.

On July 24, 1989, the "supersiting" Act, Oregon Laws 1989, chapter 789 (HB 2713), took effect under an emergency clause, calling for the siting and development of a prison "up to a capacity to accommodate 1,500 inmates and, after the approval of the Legislative Assembly, up to a capacity to accommodate 3,000 inmates." *Id.* at § 8(4).

The Act established the process that led to the selection of the subject site. The Act required that the Department nominate no more than five sites for consideration by the Siting Authority, "based on the criteria established by the department pursuant to chapter 262" and additional criteria added in chapter 789 itself. *Id.* at § 4(1). The Department was also to publish a report on its nominations. *Id.* at § 4(2). On the same date, the Department issued an amended statement

of need for new temporary rules, which incorporated its previously adopted criteria (incorporated into statutory law by chapter 789) and the additional new legislatively mandated criteria.

On August 16, 1989, the Department published a legal notice in Malheur County newspapers, stating that the deadline for submitting proposed conditions concerning the use of the site for a prison was August 31.

On September 8, 1989, the Department nominated four sites to the Siting Authority. These sites were Site 69 near Ontario in Malheur County (the subject site), Sites 64 and 94 near Boardman in Morrow County, and Site 16B near Albany in Linn County. On September 18, the Department issued a detailed report on the four sites.

On September 13, 1989, the Department published a new notice in the Malheur County newspapers that the Siting Authority would hold a public hearing on the Ontario site on September 25. The notice of the hearing date was posted 12 days before the hearing and two days before the statute required people to submit written conditions. Or Laws 1989, ch 789, § 7(2)(b). This notice did not mention that a person could submit written conditions or that a person had to submit conditions in writing to secure standing to appeal the eventual decision of the Siting Authority.[1]

On September 25, 1989, the Siting Authority conducted a public hearing in Ontario. Several petitioners testified along with other members of the community in opposition to establishing a prison at this site. Other petitioners were present but did not testify or were represented by their spouses.

On October 6, 1989, the Siting Authority held a work session at which it considered the four remaining sites and then voted to recommend the Ontario site as first choice and one of the Boardman sites as second choice. The session was

---

[1] The notice stated in part:

"MEDIA ADVISORY

"The schedule for the Emergency Correctional Facilities Siting Authority to view sites and conduct public hearings to receive department, local government, neighborhood, law enforcement and public testimony regarding the siting of a medium security prison is as follows: * * *"

continued so that findings could be drafted and considered before a final vote. On October 11, the Siting Authority conducted a work-session by teleconference and approved and issued a written decision and findings, selecting and ranking the two final sites. The Siting Authority ranked Site 69 near Ontario first, and Site 94 near Boardman second.

On October 12, 1989, Governor Goldschmidt visited the Ontario site and region and spoke with members of the community. One day later, on October 13, the Governor issued a news release approving the site selection decision of the Siting Authority.

On November 1, 1989, petitioners filed a petition for judicial review of the decision of the Siting Authority to select and submit for the Governor's approval a site near Ontario for a new minimum/medium-security prison. On November 3, petitioners filed a separate petition for judicial review of the Governor's decision approving the Siting Authority's selection and ranking. The two cases have been consolidated for purposes of judicial review.

## THE STATUTORY RIGHT TO JUDICIAL REVIEW OF THE SITING AUTHORITY DECISION

Section 10(2) of the Act provides for judicial review of any of the decisions involved in the supersiting process if "any person or local government adversely affected" by the decision files a timely petition. Or Laws 1989, ch 789, § 10(2). The statute further provides that in the case of the decision by the Siting Authority, persons are adversely affected — and thus may seek judicial review — "only" when petitioners can establish by clear and convincing evidence that (1) they participated before the Siting Authority; (2) they will be within sight or sound of the facility or are affected economically in excess of $5,000 in value; and (3) they "proposed conditions as required by subsection (2) of section 7 of this Act, which were rejected by the authority." *Id.* at § 10(2)(b)(A-C).

Petitioners challenge the decision of the Siting Authority in this appeal. Most petitioners satisfy the first two requirements in the statute for challenging the decision. None of the petitioners, however, submitted written conditions to the Siting Authority. Petitioners claim that they had no

knowledge that they were supposed to submit written conditions. Petitioners assert that they are and always have been unconditionally opposed to the use of the site for the prison and that they have no interest in any approval under any conditions.

Petitioners acknowledge that Oregon Laws 1989, chapter 789 (the Act) requires that any person desiring Supreme Court review of the Siting Authority's prison siting decision must have submitted conditions to the Siting Authority for the siting of a prison and had those conditions rejected. Petitioners further admit that they did not comply with this requirement, but argue that they are not bound by it.

First, they argue that the state is estopped to raise the conditions requirement because petitioners had no knowledge of it and the state failed to provide adequate notice of the requirement and the consequences of failing to meet it.

Second, petitioners argue that the conditions requirement cannot be enforced against them because it would force them to abandon their unconditional opposition to selection of the Ontario site, in violation of their right to free expression under Article I, section 8, of the Oregon Constitution.

Third, petitioners argue that the conditions requirement cannot be enforced because it impermissibly discriminates in favor of those who are willing to accept the project with conditions, to the detriment of persons who, like petitioners, oppose a project under any conditions, in violation of Article I, section 20, of the Oregon Constitution, and the Fourteenth Amendment to the United States Constitution.

Fourth, petitioners allege that due process required timely and proper notice of Siting Authority hearings, deadlines, conditions standards, and appeal conditions.

We address these contentions in turn.

### A. Estoppel

The only potentially pertinent notice provision in the Act is section 4(5), which requires the Department to "[p]rovide media notice regarding the process and the sites nominated * * *." It seems clear that this provision relates only to the *Department's* decision-making process, culminating in notice of the sites nominated to the Siting Authority by the Department. Section 4 generally deals only with the *Department's* report and selection process.

The statute's structure is temporal and iterates the siting process step by step. It is not until section 7 that the

Siting Authority's decision-making process comes into play, limited to considering the prior site nominations of the Department made under section 4. Section 7 contains no notice provision for the Siting Authority process.

Assuming, however, for the sake of argument only, that the notice provision of section 4(5) applies to the Siting Authority in its decision-making process, we hold that estoppel principles do not excuse petitioners' failure to submit conditions.

Section 4(5) of the Act did not require that respondents include in the media notice a statement that interested persons must submit conditions to the Siting Authority in order to preserve appeal rights. Section 4(5) requires the Department to "[p]rovide media notice regarding the process and the sites nominated * * *." The Department published notice on August 16, 1989, informing the public that (1) it was considering Site 69, located six miles northwest of Ontario, as a site for a medium security prison; (2) "[a]ccording to House Bill 2713, Section 7, Subsection 2, 'any affected local government or any person may submit proposed conditions to the [Siting] [A]uthority,' * * *" and specified the format of the conditions; (3) a deadline of August 31, 1989, was imposed for submitting the conditions and identified the person to whom they were to be sent; and (4) there was a specific person to contact at the Siting Authority for further information.

The Department nominated four sites on September 8. On September 13, it issued a "Media Advisory" announcing its hearing schedule for the nominated sites. September 25 was chosen as the date for hearing on Site 69. This notice did not re-state that persons could submit conditions. See footnote 1, *ante.*

Petitioners argue that the notice was defective because it did not advise the public that submitting written conditions was a pre-requisite to judicial review of the Siting Authority's decision.

The legislature generally does not require state agencies to notify interested persons of appeal conditions as part of the notification of the decision-making process before the agencies. The laws generally require only that final agency

orders advise the parties of their right to appeal. *See, e.g.,* ORS 183.470(4) (orders in a contested case). Petitioners cite nothing in the legislative history of chapter 789 to suggest that the legislature intended to impose this extraordinary requirement in section 4(5) merely by stating that the Department is to give "media notice of the process." We conclude that no such statutory requirement existed.[2]

The legislature clearly conditioned both a party's right to participate in a judicial review proceeding of the Siting Authority decision and this court's authority to allow such party to participate on a demonstration that the party, in fact, submitted conditions for a particular site to the Siting Authority. The legislature made it clear that satisfying these requirements was as mandatory as timely filing the petition seeking judicial review. *See* Or Laws 1989, ch 789, § 10(2)(a), (b).[3]

Estoppel, if ever applicable against the government, certainly does not apply here. Respondents are not, by virtue of their behavior, in a position to confer on or withhold from petitioners the right to petition this court for review of the Siting Authority's decision. The parties cannot create standing under this statute, much less create it by estoppel, when it

---

[2] This determination also disposes of petitioners' distinct contention that the Department failed, for the same asserted reason, to give adequate statutory notice under section 4(5) of the Department's decision-making process.

[3] Sections 10(2)(a) and (b) of the Act pertinently provide:

"Proceedings for review shall be instituted when any person or local government adversely affected files a petition with the Supreme Court that meets the following requirements:

"(a) The petition shall be filed within 21 days of issuance of the specific decision on which the petition is based, except that a petition based on a decision to issue criteria pursuant to chapter 262, Oregon Laws 1989 (Enrolled House Bill 3496), shall be filed within 21 days of the issuance of the criteria or 21 days after the effective date of this Act, whichever is later. * * *

"(b) The petition shall state the nature of the decision the petitioner desires reviewed, in what manner the decision below rejected the position raised by the petitioner below and shall state, by supporting affidavit, the facts showing how the petitioner is adversely affected. In the case of a decision by the authority, the petitioner is adversely affected only when the petitioner can establish by clear and convincing evidence in the affidavit that:

"(A) The petitioner participated before the authority;

"(B) The petitioner will be within sight or sound of the facility or is affected economically in excess of $5,000 in value; and

"(C) The petitioner proposed conditions as required by subsection (2) of section 7 of this Act, which were rejected by the authority."

does not exist as a factual matter. The statute provides that a petitioner "only" is adversely affected, and thus has standing, if the petitioner can establish that the "petitioner proposed conditions as required * * *." Petitioners cannot establish that. Moreover, given both the existence of a law published in the public domain and the fact that that law does not require the notice that petitioners assert, any reliance by petitioners on the media notice to inform them of the statutory appeal conditions was patently unreasonable, precluding estoppel.

In sum, petitioners admit that they did not fulfill one of the statutory requirements to enable them to contest the Siting Authority's decision in this court. Estoppel does not apply. Petitioners lack standing by statute to petition for judicial review of that decision.

We now turn to petitioners' constitutional claims that enforcement of the statutory standing requirement violates petitioners' rights to free speech, equal privileges and immunities and equal protection, and due process.

### B. Free Speech

■ Petitioners argue that requiring them to submit conditions as a prerequisite for judicial review of the Siting Authority's decision requires them to "forego their right to express themselves in a public forum on a public issue in order to secure the right to judicial review." They assert that the conditions requirement "restrains the speech of persons who oppose a site by requiring them to modify the content of their expression in order to seek judicial review." Petitioners claim that the requirement places "content" restrictions on their speech, restrictions which they allege violate both Article I, section 8, of the Oregon Constitution and the First Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment.

The free speech guarantees of the Oregon and federal constitutions clearly were not intended to foreclose government's ability to impose reasonable requirements on the statutory right to seek judicial review of governmental decisions, even if those requirements necessitate that speech concern a specific subject to achieve review. Indeed, this standing requirement (like others in the administrative law area) merely recognizes that absolute undifferentiated opposition to

the site will not be a basis for judicial review or modification of the siting decision.[4] Which is not to say that such opposition is irrelevant to the authority's decision-making process (section 4(1)(a) of the Act makes community interest a criterion), it is only to say that such opposition is not, by itself, a basis for standing.

The legislature's imposition of the conditions requirement encourages interested persons to do more than simply stand back and say "We object." If community interest were the only or dominant criterion in the process, the age-old problem of "Sure, we need more prisons, but not here," might never be solved. The legislature determined that responsible problem-solving in the prison-siting context involves not only ensuring that a particular site meets applicable specified criteria, but that interested and affected persons recommend conditions under which the selection of a site should be approved before gaining the right potentially to delay the process and subject the decision to judicial review. Imposing this requirement does not force objectors to abandon their general objections, nor did petitioners do so at the hearings. Their state and federal free speech rights are not violated by the statutory standing requirement.

*C.   Equal Privileges and Immunities and Equal Protection*

Petitioners' equal privileges and immunities and equal protection arguments also lack merit. The short answer to petitioners' Article I, section 20, argument is that the alleged "classification" is not based on person or social characteristics of the asserted "class." *See Hale v. Port of Portland,* 308 Or 508, 783 P2d 506 (1989).

The legislature determined that the public interest in a responsible and expeditious prison siting process demands that persons who want to challenge the ultimate selection of a prison site have participated in that process by submitting site conditions. This requirement is rationally connected to a legitimate governmental interest and as such does not violate

---

[4] Judicial review is limited to claims of *ultra vires* action or lack of substantial evidence. Or Laws 1989, ch 789, § 10(4). The petition for judicial review must state "in what manner the decision below rejected the position raised by the petitioner below * * *." *Id.* at § 10(2)(b).

the Fourteenth Amendment. *See Hale v. Portland, supra,* 308 Or at 526.

### D. Due Process

■ Petitioners further contend that both the content of the notice, as well as the manner in which it was given, failed to meet due process requirements. Petitioners argue that they were entitled, at a minimum, to timely and proper notice of the Siting Authority hearings, deadlines, conditions standards, and appeal conditions. Petitioners assert that due process "at bottom means timely and proper notice of the proposed deprivation and a meaningful opportunity to be heard to present objections."

Assuming for the sake of argument only that petitioners are affected by a constitutionally cognizable deprivation by the siting of the prison in Malheur County, the fact is that petitioners appeared at the Siting Authority's hearing and voiced their objections. The statutory appeal conditions were a matter of public record, readily accessible to all. Petitioners fail to allege how their manner of participation was in any way affected by the method or content of the notice furnished. Assuming some right to notice, petitioners have not alleged a cognizable constitutional violation.

In sum, then, petitioners lack standing to petition for judicial review from the Siting Authority decision. Their assertions of estoppel, unconstitutionality of the standing requirement, and lack of constitutionally adequate notice are not well taken.[5]

## THE DEPARTMENT'S PROCESS AND DECISION

### A. Timeliness of Petitioners' Challenges

Petitioners contend that the Department failed to comply with the Oregon Administrative Procedures Act

---

[5] This holding means that the court will not address the merits of the following contentions insofar as they relate to the Siting Authority's decision: (1) that the Siting Authority's decision is not supported by substantial evidence; (2) that the Siting Authority was required to make comparative findings regarding sites; and (3) that the Siting Authority exceeded its statutory authority by making a decision without proper consideration of certain land use matters. The last of these will be discussed in the text above with respect to the Department.

requirements in adopting OAR 291-90-010, specifying mandatory and permissible criteria to be considered in the nomination and selection of a prison site.

Petitioners contend that the court may review the validity of the rules even though petitioners did not petition for review of the rules within 21 days after the effective date of chapter 789, as required by section 10(2)(a) of that chapter.

Section 10(2)(a) provides that any challenge to the validity of criteria adopted by the Department under the authority conferred by chapter 262 "shall be filed within 21 days of the issuance of the criteria or 21 days after the effective date of this Act, whichever is later."

The legislature required that challenges to discrete decisions in the siting process be made expeditiously so that if no challenge were made, the next stage of the process could proceed with confidence that a belated challenge to an earlier decision would not derail or delay the process. The legislature did not intend that the Department's criteria could be challenged in an appeal from the final Siting Authority's site selection decision on the basis that the Siting Authority in making its decision had acted outside its authority. Petitioners' challenge to the validity of the Department's rules was not timely.

### B. Delegation

Petitioners also contend that the Department's criteria adopted under chapter 262 were the product of constitutionally flawed delegation of legislative authority because the legislature provided neither standards to guide administrative discretion nor adequate procedures to guard against an abuse of the power conferred. Whatever the merits of their contention, as noted above, petitioners' challenge to the validity of the rules is not timely.

### C. Land Use

Petitioners concede that the legislature in section 9(1) of the Act exempted the prison facility itself from environmental laws and land use regulations. Petitioners argue, however, that in doing so the legislature did not intend to exempt from regulatory scrutiny the attendant public facilities and services and other matters needed to make the prison

facility operational. They argue that respondents exceeded their statutory authority by adopting criteria and making a decision without proper consideration of these matters.

This argument is not timely and has been made moot by legislative adoption of the binding decisional criteria.

Petitioners' challenges to the decisions of the Siting Authority and the Governor approving the Ontario site for Oregon's next minimum/medium-security prison are dismissed.