Argued and submitted September 22, decisions of the Department of Corrections, the Corrections Facility Siting Authority, and the Governor affirmed December 16, 1997, petition for review denied January 27, 1998

CITY OF WILSONVILLE,
*Petitioner,*

*v.*

DEPARTMENT OF CORRECTIONS,
*Respondent.*

(SC S44165 (Control), S44254)

OREGONIANS FOR RESPONSIBLE PRISON SITING,
Park at Merryfield Homeowners Association,
Joanne Mills, Eva Ferara, Arnold Chase,
Dan Willis, Cathy A. Rice, and Klaus Gibson,
*Petitioners,*

*v.*

CORRECTIONS FACILITY SITING AUTHORITY
and Department of Corrections,
*Respondents.*

(SC S44255)

J. Marshall GILMORE
and Deborah J. Gilmore,
*Petitioners,*

*v.*

DEPARTMENT OF CORRECTIONS,
*Respondent.*

(SC S44256)

CITY OF WILSONVILLE,
*Petitioner,*

*v.*

DEPARTMENT OF CORRECTIONS
and John A. Kitzhaber, M.D.,
*Respondents.*

(SC S44270)

951 P2d 128

Michael E. Kohlhoff, City Attorney, Wilsonville, argued the cause for petitioner City of Wilsonville. With him on the briefs was Joan S. Kelsey, Assistant City Attorney.

John R. Faust, Jr., of Schwabe, Williamson & Wyatt, P.C., Portland, argued the cause for petitioners Oregonians For Responsible Prison Siting, Park at Merryfield Homeowners Association, Joanne Mills, Eva Ferara, Arnold Chase, Dan Willis, Cathy A. Rice, and Klaus Gibson. With him on the briefs was Steve C. Morash.

J. Marshall Gilmore, Wilsonville, argued the cause and filed the brief *in propria persona* and for petitioner Deborah J. Gilmore.

Michael D. Reynolds, Assistant Solicitor General, Salem, argued the cause and filed the brief for respondent Department of Corrections.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.*

VAN HOOMISSEN, J.

---

* Kulongoski, J., did not participate in the consideration or decision of this case.

## VAN HOOMISSEN, J.

This is an original proceeding for judicial review of a decision to build certain new corrections facilities at the Dammasch State Hospital site in Wilsonville, Oregon.

Petitioners[1] seek reversal of three separate, but sequential, decisions made by respondents Department of Corrections (the department), Corrections Facilities Siting Authority (the Siting Authority), and the Governor of the State of Oregon (the Governor), respectively, to nominate, select, and approve the Dammasch State Hospital property (the Dammasch site), as a site for the construction of new corrections facilities. The City of Wilsonville (the city) opposes locating any corrections facilities at the Dammasch site; it is joined in its opposition by local citizens and citizen groups. This court has exclusive jurisdiction to review the challenged decision. ORS 421.630(1). For the reasons that follow, we affirm the decisions of the department, the Siting Authority, and the Governor.

The 1995 legislature enacted Oregon Laws 1995, chapter 745, codified at ORS 421.611 to 421.630, which established an expedited process for selecting sites for new prison facilities. This expedited process is referred to as "supersiting." *See Dunning v. Corrections Facility Siting Authority*, 325 Or 269, 271-73, 935 P2d 1209 (1997) (explaining process).

In January 1997, the Governor issued an executive order initiating the process for building a new corrections facility and its future expansion. The order stated that the planned facility would be located in Clackamas, Multnomah, or Washington County (the tri-county area). After meeting with local elected officials, the department nominated three sites: Dammasch, Seaport, and Butternut. Thereafter, the Siting Authority evaluated the three sites. Petitioners submitted proposed conditions to the Siting Authority. After

---

[1] In many respects, petitioners' assignments of error and arguments overlap. Therefore, in this opinion, the word "petitioners" may refer to one or more of the individual petitioners in these consolidated cases.

holding a public hearing, the Siting Authority issued its findings selecting the Dammasch site and rejecting some of petitioners' proposed conditions. In May 1997, the Governor approved the selection of the Dammasch site. Petitioners timely filed a petition for judicial review.

The primary issues presented on judicial review are: (1) did the department rely on improper criteria in nominating the Dammasch property; (2) did the department's prenomination meeting with local elected officials satisfy the "discussion" requirement of ORS 421.618; (3) did a "memorandum of understanding" involving the Dammasch site, signed by the City of Wilsonville and several state agencies, preclude the department from finding that the Dammasch site was "available"; (4) is the limited substantial evidence standard of review provided in ORS 421.630(4)(b), set out below, 326 Or at 159, an adequate procedural safeguard or an adequate remedy under Article I, section 10, of the Oregon Constitution;[2] (5) were the Siting Authority's findings and its rejection of petitioners' proposed conditions supported by substantial evidence; and (6) was the Siting Authority required to rank nominated sites and make findings explaining its ranking of the nominated sites. We proceed to consider petitioners' assignments of error and arguments.[3]

## NOMINATING CRITERIA

Petitioners first challenge the department's nominating criteria. The statutory and rule criteria for nominating a corrections site are set out in ORS 421.614 and 421.616, and in OAR 291-073-0020 and 291-073-0030. Petitioners'

---

[2] Article I, section 10, provides:

"No court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done him in his person, property, or reputation."

[3] ORS 421.630(4) provides, in part:

"Upon review, the Supreme Court may reverse or remand the decision if the Supreme Court finds the department, the authority or the Governor:

"(a) Exceeded the statutory or constitutional authority of the decision maker; or

"(b) Made a decision not supported by substantial evidence."

challenge is untimely, because it is a challenge to the department's promulgated rules, not a challenge under ORS 421.616 to the nomination of the Dammasch site. *See* ORS 421.630(2)(a) ("a petition based on a decision to adopt criteria pursuant to ORS 421.614 shall be filed within 21 days of the issuance of the criteria"); *see also Committee in Opposition v. Oregon Emergency Correc.*, 309 Or 678, 689, 792 P2d 1203 (1990) (under 1989 siting law, the legislature required that challenges to discrete decisions in the siting process be made expeditiously so that, if no challenge is made, the next stage of the process could proceed with confidence that a belated challenge to an earlier decision would not cause delay).

■ Petitioners next argue that the Governor usurped the power of the legislature by incorporation of a geographic criterion in his executive order, and that by heeding the Governor's directive to limit site selection to the tri-county area, the department exceeded its delegated authority. Again, because it is an attack on the Governor's executive order, petitioners' challenge fails. That order was an action or decision "relating to the * * * siting of a correctional facility," for which this court may exercise exclusive judicial review on petition filed within 21 days of the issuance of the order. ORS 421.630(1) and (2)(a). Petitioners' failure to challenge the Governor's order within that time precludes consideration of it here. *See Committee in Opposition*, 309 Or at 689 (so holding under analogous process).

## PRE-NOMINATION MEETING

ORS 421.618 provides:

> "Prior to nominating sites pursuant to ORS 421.616, the Department of Corrections shall hold a meeting or multiple meetings with the elected local government officials involved to discuss the site selections, the on-site and off-site improvements needed at each site and the site preferences of the local governments."

Petitioners acknowledge that the department held a meeting with elected local government officials before nominating the Dammasch site, but they argue that the discussions were not "meaningful." Respondents answer that petitioners actually are complaining that the meeting was

procedurally inadequate and that an alleged error in procedure is beyond the scope of this court's judicial review authority under ORS 421.630(4).

■    Assuming, *arguendo*, that petitioners' claim is within this court's scope of review (a question that we do not decide here), nothing in the text or context of ORS 421.618 suggests that the legislature intended to use the word "discuss" in other than its ordinary meaning, which is to talk about the subject.[4] The record shows that, at the meeting, the department discussed, among other things, site selections, on-site and off-site improvements needed at each site, and site preferences of the local governments. We conclude that the Department's prenomination meeting satisfied the requirements of ORS 421.618.

### "AVAILABILITY" OF THE DAMMASCH SITE

Petitioners argue that the Dammasch site facility was "unavailable"[5] to be nominated by the Department under the statutory and mandatory rule criteria. We are not persuaded by that argument.

Petitioners further argue that the site was "available" only because the department impaired a preexisting "contract" that purported to restrict the state's sale and use of the property, and such impairment violated Article I, section 21, of the Oregon Constitution ("No * * * law impairing the obligation of contracts shall ever be passed.").

The "contract" on which petitioners rely is a January 1996 "Memorandum of Understanding" (MOU) entered into by several state agencies, the city, and the Metropolitan Service District regarding the Dammasch site.[6] Petitioners

---

[4] *Webster's Third New Int'l Dictionary* 648 (unabridged ed 1993), defines "discuss" as "to discourse about * * * to converse or talk about * * * exchange views or information about."

[5] "Availability" is a very flexible concept, subject to a variety of circumstances and limitations that will be different for every proposed site. *Dunning v. Corrections Facility Siting Authority*, 325 Or 269, 277, 935 P2d 1209 (1997).

[6] The MOU states, in part:

"[T]he parties have agreed to cooperatively prepare a plan for future disposition and development of the Dammasch site.

"* * * * *

"This [MOU] confirms the parties' commitment to work cooperatively toward an agreement of mutual benefit on a land use plan for the [Dammasch

argue that the MOU is an enforceable contract between the state and the other signatories thereto. Assuming, *arguendo*, that the MOU is a contract, petitioners do not identify any "obligation" of that contract that the selection of the Dammasch site impaired.

## PROCEDURAL SAFEGUARDS AND ADEQUACY OF REMEDY

ORS 421.630(4)(b) provides, in part:

"For purposes of this subsection and ORS 421.623(3), 'substantial evidence' means evidence that, taken in isolation, a reasonable mind could accept as adequate to support a conclusion. The substantiality of the evidence shall not be evaluated by considering the whole record."

Petitioners argue that the standard of review in ORS 421.630(4)(b) is irrational, that it leads to arbitrary decisionmaking in excess of the legislature's delegation of authority, and that it fails adequately to safeguard those adversely affected parties in whose favor the evidence preponderates. They argue further that this standard of review fails to provide an adequate safeguard against an arbitrary or irrational exercise of executive power and, therefore, that it violates Article III, section 1, of the Oregon Constitution.[7]

The supersiting law is a delegation of legislative authority that must be accompanied by adequate safeguards. *See Warren v. Marion County*, 222 Or 307, 314, 353 P2d 257 (1960) ("the important consideration is * * * whether the procedure established for the exercise of the power furnishes adequate *safeguards* to those who are affected by the administrative action") (emphasis in orginal). Petitioners contrast ORS 421.630(4)(b) with ORS 421.623(3), which, they argue,

---

Hospital] site. It is recognized that given the many variables affecting the site some difficult accommodations may be necessary."

[7] Article III, section 1, provides:

"The powers of the Government shall be divided into three seperate (*sic*) departments, the Legislative, the Executive, including the administrative, and the Judicial; and no person charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided."

directs the Siting Authority to base its decisions on "substantial evidence in the record as a whole." This court has interpreted the "substantial evidence in the whole record" standard to require an evaluation of the substantiality of supporting evidence by considering all the evidence in the record. *Younger v. City of Portland*, 305 Or 346, 356, 752 P2d 262 (1988).

■    Petitioners argue that ORS 421.630(4)(b) presents a one-sided standard, which this court has disfavored:

> "As Professor Jaffe noted prior to the enactment of the federal APA, 'Obviously responsible men [and women] would not exercise their judgment on only that part of the evidence that looks in one direction; the rationality or substantiality of a conclusion can only be evaluated in the light of the whole fact situation or so much of it as appears.' *Administrative Procedure Re-examined: The Benjamin Report*, 56 Harv L Rev 704, 733 (1943)." *Younger*, 305 Or at 357.

Respondents answer that, although the definition of substantial evidence in ORS 421.630(4)(b) differs from the concept used in other contexts, it nonetheless is a constitutionally adequate standard of review to safeguard the interests at stake here. We agree. We conclude that it is not irrational for the legislature to direct that this court be bound by the Siting Authority's findings of fact when those findings are supported by evidence that, when taken in isolation, a reasonable mind could accept as adequate to support a conclusion. Moreover, ORS 421.630(4)(a) permits judicial review of allegations that the decision-maker exceeded its "statutory or constitutional authority." That is an additional safeguard against the improper exercise of delegated authority.

■    Finally, contrary to petitioners' argument, *Warren* does not hold that the statute delegating the power must express standards. Rather, *Warren* holds that the procedure established for the exercise of such power must furnish adequate safeguards to those who are affected by the administrative action. 222 Or at 314-15. We conclude that the super-siting law provides adequate safeguards to those who are affected by administrative action in the corrections facilities siting process.

■ Petitioners also argue that ORS 421.630(4)(b) violates Article I, section 10, of the Oregon Constitution, because it deprives persons who have suffered injury to their property of a substantial "remedy." The injury is established, they claim, by the fact that local homeowners "will be affected economically in excess of $5,000 in value, as demonstrated by their affidavits in these cases." Even assuming, *arguendo,* that such a projected loss is an "injury," petitioners do not show how they are denied the right to seek damages for that loss. Even if the siting process causes financial losses to the site's neighbors, that alone would not be sufficient to deny the state the right to proceed with siting, so long as the state remained subject to an action for damages.

## SUBSTANTIAL EVIDENCE

ORS 421.623 provides, in part:

"(3) Within 45 days after nomination of the sites as set forth in ORS 421.616, the authority shall select and rank in order of preference such sites as the Governor deems necessary or advisable for the construction and operation of corrections facilities, and specify site development conditions for each site, based on substantial evidence in the record as a whole and supported by findings, which findings shall address only:

"(a) The criteria specified by the department pursuant to ORS 421.614 and in ORS 421.616.

"(b) The reasons for not adopting any of the proposed conditions that were submitted in accordance with subsection (2) of this section for the selected sites.

"(4) If one or more of the nominated sites meets the mandatory criteria established by the department pursuant to ORS 421.614, the local jurisdiction demonstrates interest as described in subsection (5) of this section, and the authority selects a site that has not demonstrated interest as described under subsection (5) of this section, the authority shall make findings that demonstrate why it selected the site in which the local jurisdiction did not demonstrate interest."

Petitioners challenge the Siting Authority's findings with respect to demonstrated interest, infrastructure (water, sewer, and roads), and costs of development. They argue that

the Siting Authority's findings on those matters are not supported by substantial evidence in the record as a whole. We consider those findings in turn.

## 1. Demonstrated interest

ORS 421.623(4) provides that, if the Siting Authority selects a site in an uninterested jurisdiction over one in an interested jurisdiction, it must explain why it did so. In this case, no jurisdiction requested the proposed corrections facility.

■ The Siting Authority found that

"no [ORS 421.623(4)] findings are required, inasmuch as none of the local jurisdictions affected by the sites nominated expressed interest in having a corrections facility located within its jurisdiction."

Petitioners argue that the Siting Authority was required to determine whether "the lack of sites from interested jurisdictions was warranted." The Siting Authority has no such responsibility. We find petitioners' argument unpersuasive.

## 2. Infrastructure

Petitioners find fault with the Siting Authority's findings with respect to the ability of the City of Wilsonville to provide the necessary water, sewer, and road infrastructure. We conclude, however, that the Siting Authority's findings are adequate. The relevant factual issue is whether the necessary infrastructure is *or can be made* available. The Siting Authority found that the Dammasch site has infrastructure available either on-site or that can be provided and maintained cost effectively, and that no persuasive testimony suggested that the cost of needed infrastructure improvements would be unreasonable. Petitioners' argument as to each finding appears to be a challenge to the lack of specific plans for specific infrastructure systems. However, ORS 421.623(3) does not require detailed findings about those matters.

### 3. Costs of development

ORS 421.616(1)(e) requires the Siting Authority to address the cost of developing the proposed facility, including, but not limited to (a) the cost of land acquisition and construction, including the availability of land or facilities owned by the state, and (b) the cost of operating the facility. The Siting Authority found:

> "The site is currently owned by a state agency. Therefore, the state is not required to expend general fund resources to acquire the site for a correctional facility."

■ Petitioners first argue that, because "the fair market value needs to be reviewed to look at an exchange or a sale and purchase of another site to evaluate true cost," it is incorrect to say that the Dammasch site may be acquired at no cost to the state. ORS 421.616(1)(e) does not mandate that the Department's finding address the "true" cost of using a site currently owned by a state agency.

Petitioners also attack the lack of specific findings as to the "actual dollar costs" of improving water, sewer, and road infrastructure at the Dammasch site, and the Department's contribution thereto. Petitioners point to no authority suggesting that the Siting Authority is required to address those issues in greater detail, and we are aware of none.

### 4. Natural buffers

■■ Petitioners argue that ORS 421.616(1)(c) requires a finding that "natural features are present that allow a design to promote compatibility with the surroundings." We conclude, however, that the Siting Authority's finding that there were some natural features which would allow the design to be compatible with the uses of the surrounding land meets the criterion. ORS 421.616(1)(c) does not require, as petitioners' argument seems to imply, that the Siting Authority must find that the site selected is *fully* surrounded by natural buffers.

### 5. Size

Petitioners argue that the department exceeded its authority by refusing to consider any sites under 200 acres. Under OAR 291-073-0030(2), the department has a desirable

criterion that a site be 200 to 300 acres, with 300 acres being the preferred size. The record shows, however, that the department did not limit its consideration to sites containing more than 200 acres. Indeed, the Dammasch site itself comprises only about 190 acres. The department also considered at least three other sites that were under 200 acres. Petitioners' argument is unpersuasive.

### 6. Rejection of proposed conditions

Petitioners challenge the rejection of their proposed condition of reimbursement, which rests on their theory that the decreased value of their property is a constitutional "taking." However, they offer no legal authority for their theory in the context of this special statutory proceeding, and we know of none. We therefore reject it. Nothing in the judicial review provisions of ORS 421.630 deprives petitioners of their right to sue in inverse condemnation if they believe that a "taking" has occurred.

### 7. Nature of rejection

Finally, petitioners argue that the Siting Authority improperly rejected their proposed conditions in "nonresponsive statements and without reason based on substantial evidence." We disagree with petitioners' reading of the record. We conclude that the Siting Authority's findings, conditions, and decision are adequate for the purposes of this special proceeding. We also conclude that petitioners' arguments in that regard are unpersuasive.

## RANKING OF NOMINATED SITES

ORS 421.623(3) provides, in part:

> "Within 45 days after nomination of the sites * * * the authority shall select and rank in order of preference such sites as the Governor deems necessary or advisable for the construction and operation of corrections facilities * * *[.]"

Petitioners argue that the Siting Authority failed to rank the Dammasch site against the other two nominated sites and that, if all three sites had been ranked, there would not be substantial evidence in the record to support the choice of the Dammasch site. Respondents answer that ORS 421.623(3) applies only when more than one site is selected.

Here, the Siting Authority selected only one site. We agree with respondents that, on these facts, ranking was not required.

In summary, we have considered each of petitioners' contentions and every argument advanced in support thereof. We conclude that any contention or argument not discussed in this opinion is not well taken. For the reasons explained above, we hold that the department, the Siting Authority, and the Governor did not err in any of the respects advanced by petitioners.

The decisions of the Department of Corrections, the Corrections Facility Siting Authority, and the Governor are affirmed.