Argued and submitted April 1, decision of the Corrections Facility Siting Authority affirmed April 29, 1997

Robert DUNNING
and Janet Dunning,
*Petitioners,*

*v.*

CORRECTIONS FACILITY SITING AUTHORITY
and Department of Corrections,
*Respondents.*

(SC S43836)

935 P2d 1209

William H. Sherlock, of Sherlock & Jerome, Eugene, argued the cause for petitioners. Manford R. Jerome, Jr., filed the briefs.

Michael D. Reynolds, Assistant Solicitor General, Salem, argued the cause for respondents. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Graber, and Durham, Justices.*

GILLETTE, J.

---

* Kulongoski, J., did not participate in the consideration or decision of this case.

## GILLETTE, J.

This is a proceeding for judicial review of a decision of respondent Corrections Facility Siting Authority (the Siting Authority) that approved a proposal by the Department of Corrections (the Department) to build a corrections facility at the Rigdon Ranger Station (the Rigdon site) near the town of Oakridge. Petitioners Robert and Janet Dunning live in the area adjacent to the proposed site and object to the Siting Authority's decision on various grounds. For the reasons expressed below, we affirm the decision of the Siting Authority.

This is the first proceeding that has come before this court involving the present method of selecting sites for proposed corrections facilities. We therefore set out in detail the steps involved in that process, including the criteria used and the bases on which judicial review may be sought.

In 1995, the legislature enacted Oregon Laws 1995, chapter 745, now codified at ORS 421.611 to 421.630. That measure contains legislative findings that "[t]here is a serious and urgent need to construct and operate additional correction[s] facilities in this state" and that "[i]mmediate corrections facility planning and siting requires an expedited process." ORS 421.611(1) and (2). Pursuant to those findings, the balance of the measure creates a special corrections facilities siting process.

The siting process calls, first, for the Department to create by rule "mandatory and desirable criteria" under which potential corrections facility sites can be identified. ORS 421.614. The Department then nominates potential sites for corrections facilities, based on criteria established by rule and certain additional criteria identified in the statute, including local interest and capacity to provide infrastructure and support. ORS 421.616(1).

Nominated sites are then evaluated by a newly created administrative body, the Siting Authority, which is directed to hold hearings concerning each of the nominated sites and to decide which sites should be developed as corrections facilities. ORS 421.621; ORS 421.623. Final authority to

approve or disapprove the sites selected by the Siting Authority is reserved to the Governor. ORS 421.626.

The hearing process under which the Siting Authority reviews nominated sites is set out in ORS 421.623. The hearing is to be held within 30 days of site nomination "within the region where each nominated site is located." ORS 421.623(1). Not later than 10 days before the scheduled hearing, "any affected local government or any person" may submit a statement of one or more "proposed conditions" to the Siting Authority. Each such proposed condition is to:

"(a)  Be stated separately;

"(b)  Be in writing;

"(c)  Identify the site to which the condition, if approved, would attach;

"(d)  Be specific;

"(e)  Directly relate to any site or its proposed development, infrastructure, access thereto or physical condition on or in the immediate vicinity of such site; and

"(f)  Be supported by a statement of the need or reasons [for the condition]."

ORS 421.623(2).

Within 45 days after site nomination, the Siting Authority is to produce a report selecting and ranking sites. That report is to

"specify site development conditions for each site, based on substantial evidence in the record as a whole and supported by findings, which findings shall address *only*:

"(a)  The criteria specified by the department pursuant to ORS 421.614 and in ORS 421.616.

"(b)  The reasons for not adopting any of the proposed conditions that were submitted in accordance with subsection (2) of this section for the selected sites."

ORS 421.623(3) (emphasis added).

Authority to conduct judicial review of alleged defects in the foregoing steps is conferred directly on this court. ORS 421.630(1). Subject to certain criteria concerning

timeliness and minimum allegedly adverse effects due to the Siting Authority's siting choice, "any person or local government adversely affected" may seek review. ORS 421.630(2). This court's authority on review is set out in ORS 421.630(4):

"Upon review, the Supreme Court may reverse or remand the decision if the Supreme Court finds the * * * authority * * *:

"(a)   Exceeded the statutory or constitutional authority of the decision maker; or

"(b)   Made a decision not supported by substantial evidence. For purposes of this subsection and ORS 421.623(3), 'substantial evidence' means evidence that, taken in isolation, a reasonable mind could accept as adequate to support a conclusion. The substantiality of the evidence shall not be evaluated by considering the whole record."

It is within the foregoing statutory framework that the present petition for judicial review is to be analyzed.

In October 1996, the Department issued a report nominating the Rigdon site. The Siting Authority held a hearing pursuant to ORS 421.623. In a timely manner, petitioners submitted five proposed conditions to be imposed on the Rigdon site, the net effect of which was to object to the nomination of that site. As relevant to the present proceeding, petitioners proposed the following conditions, subsequently numbered by the Siting Authority as Proposed Conditions 32 and 35:

"[Proposed Condition 32:] The proposed Rigdon Correction[s] Facility will not be selected by the Corrections Facility Siting Authority unless FEMA [the Federal Emergency Management Authority] determines that the site is located outside the 100-year flood zone of Salmon Creek.

"[Proposed Condition 35:] Prior to the transfer of national forest land to the State of Oregon for the proposed Rigdon Correction[s] Facility, the United States Forest Service must prepare an environmental impact statement."

In selecting the Rigdon site, the Siting Authority rejected petitioners' proposed conditions. Concerning Proposed Condition 32, the Siting Authority stated: "The site meets mandatory criteria [sic] #3 of the Department's rule for

siting related to FEMA mapping." With respect to Proposed Condition 35, the Siting Authority stated: "State and federal law presently govern actions under this condition. The Siting Authority believes [that] it is inappropriate to impose additional requirements beyond those already imposed by law." Petitioners then sought judicial review in this court pursuant to ORS 421.630.[1]

Pursuant to the authority granted to it in ORS 421.614, the Department adopted rules specifying mandatory and desirable criteria to be used in its nomination of, and in the Siting Authority's selection of, prison sites to be recommended to the Governor. The rules are codified at OAR 291-073-0010 to 291-073-0040. The rules relevant to this proceeding are OAR 291-073-0020(1) and (3). They provide the following mandatory criteria for all proposed corrections facility sites:

> "(1) A proposed site must be available by purchase, condemnation, exchange or otherwise.

> "* * * * *

> "(3) A proposed site must not be located in a 100-year flood plain as defined by a current FEMA map."

Petitioners argue, first, that the Siting Authority's decision to reject petitioners' Proposed Condition 32, relating to locating the facility outside the 100-year flood plain of Salmon Creek, was contrary to the requirement of OAR 291-073-0020(3) and, therefore, was "not supported by substantial evidence." Before reaching the merits of that contention, we find it appropriate to assess our scope of review of this and similar contentions.

■ The Siting Authority argues, and we agree, that our scope of review in these proceedings is narrow. As already noted, the limited authority granted to this court in ORS 421.630(4) makes that manifest. However, the Siting Authority asserts that our authority is so circumscribed under the "substantial evidence" standard in ORS 421.630(4)(b) that

---

[1] In their petition for review, petitioners alleged that they met the statutory qualifications found at ORS 421.630(2) for standing to bring this proceeding. The Siting Authority does not challenge petitioners' standing in this court. We therefore do not address that question.

we can apply that standard of review only to conditions that the Siting Authority *accepts*. There is no such review, the Siting Authority claims, for conditions that it chooses to *reject*. Instead, there is to be no review *at all* of such choices or, if there is to be any review, it is only to determine whether the Siting Authority actually considered the rejected condition.

We do not understand our scope of review to be *quite* as limited as the Siting Authority asserts that it is. The Siting Authority is required to make affirmative findings with respect to the criteria established by the Department's rules under ORS 421.614 and by statute under ORS 421.616. ORS 421.623(3)(a). To the extent that those findings are factual, they must be supported by "substantial evidence in the record as a whole," as that otherwise familiar administrative law term is specially defined for the purposes of the present statutory scheme. ORS 421.623(3); ORS 183.482(8)(c).

*Our* review for substantial evidence is different, however. For the purposes of *our* review, "substantial" evidence is defined specifically by ORS 421.630(4)(b) as "evidence that, taken in isolation, a reasonable mind *could* accept as adequate to support a conclusion." (Emphasis added.) That definition is a direction to this court to sustain a finding that is supported by *any* evidence that a reasonable mind could accept. There is an obvious inconsistency between the two uses of the phrase, "substantial evidence," in the statutory scheme that is before us. However, whatever the inconsistency may mean in other cases, there is no gainsaying which standard is relevant to our review.

This case involves *rejected conditions*. It may be true, as the Siting Authority suggests, that many proposed conditions will be rejected without any factual findings at all. Rather, those proposed conditions may be rejected on policy or other grounds that the Siting Authority deems sufficient, with the Siting Authority's only obligation being to state in its report "the reasons" why it rejected each proposed condition. ORS 421.623(3)(b). Whether such a course would be permissible is an interesting question, in the light of the reference in ORS 421.623(3) to "findings."[2] But we need not

---

[2] In addition to that inconsistency between ORS 421.623 and 421.630 already noted, there is another odd characteristic in the statutory scheme. ORS

resolve that question here because, in this case, the Siting Authority *did* make findings to support its rejection of petitioners' proposed condition.

When the Siting Authority makes findings of fact with respect to rejected conditions, we find nothing in the wording of ORS 421.630(4)(b) that prevents this court from reviewing such findings for substantial evidence, as defined in the statute.[3] In such circumstances, we shall—if asked to do so by a petitioner—conduct a "substantial evidence" review. We return to the challenges mounted by these petitioners.

■   As noted, the Siting Authority rejected petitioners' proposed Condition 32 concerning a FEMA map of the 100-year flood plain of Salmon Creek on the ground that the site meets the criterion for FEMA mapping. The record establishes that, because the proposed site is on federal land, there *is no* FEMA map of the pertinent flood plain. FEMA has not

---

421.623(3)(b) directs the Siting Authority to specify the site development conditions that it *adopts* for each nominated site, and to base that decision on substantial evidence supported by findings. The statute also requires the Siting Authority, in its findings that *support adoption* of the specified site development conditions, to state its reasons for *not adopting* any conditions proposed by an affected local government or person under ORS 421.623(2).

The possible inconsistency of those requirements manifests itself in two ways. First, findings about why the Siting Authority *rejects* a proposed condition may bear little or no relationship to the evidence or the reasoning that *supports* specification of a site development condition. Second, requiring the Siting Authority to address its reasons for rejecting any proposed condition by *findings* may imply that the Siting Authority must base its rejection decision on some fact in the record, and that record must support that fact with substantial evidence. But the Siting Authority rationally may desire to reject a proposed condition for a reason that is not factual in nature, or is unrelated to any evidence in the record. The statute does not make clear what the Siting Authority's obligation to support its decision to reject proposed conditions with findings based on substantial evidence means, or what this court's task may be on judicial review of that decision.

To repeat, we do not address those interpretive problems, because this case does not present them. However, in the light of these comments, ORS 421.623 and 421.630 might profit from a legislative revisit, solely for the purpose of clarification.

[3] Of course, the statute speaks in terms of the "decision" being supported by substantial evidence. In the technical sense, this phrase is inexact, because it is findings of fact, and not a decision as a whole, that must be supported by evidence. However, what the legislature appears to have done is to truncate what is a two-step process into a one-step description. We therefore treat our review as being one that focuses on findings of fact and their supporting evidence, with the efficacy of the "decision" thus depending derivatively on that first level of inquiry.

prepared maps for such federal lands. The site therefore literally meets the rule's criterion.

Petitioners argue that, even if the site meets the literal wording of the rule, it does not conform with the underlying rationale of the rule. We are not at liberty to ignore a criterion this clear, however. The finding is supported by substantial evidence. The Siting Authority did not err in this regard.

■ Petitioners argue in the alternative that the Siting Authority erred in determining that the site was "available," as required by OAR 291-073-0020(1). The record establishes that the site presently is federal property, actively being considered for designation as "surplus" land. If and when the land is so designated, a transfer to the State of Oregon could be negotiated but, before such a transfer could be carried out, various administrative steps (including the preparation of an Environmental Impact Statement under the Federal Environmental Protection Act) would be necessary. *See, e.g., Conserv. Law Foun. of N. Eng. v. Gen. Serv. Admin.*, 707 F2d 626 (1st Cir 1983) (illustrating need for Environmental Impact Statement when federal property is transferred to control of another entity). Under such circumstances, petitioners urge, the eventual availability of the property is too speculative to permit the Siting Authority to find that the property is "available."

We disagree. "Availability" is—and must be—a very flexible concept, subject to a variety of circumstances and limitations that will be different for every proposed site. It is true that it will not be possible for the state to secure the Rigdon site immediately or, indeed, for some time to come. But the record does contain evidence of all the facts noted above. And we cannot say, from those facts, that the Siting Authority committed legal error in concluding that it was reasonable to expect that the property would, if pursued, be subject to purchase by the state in due course. That was sufficient to make the property "available."[4]

---

[4] This is not a case in which we apply the deferential standard of *Clark v. Jackson County*, 313 Or 508, 836 P2d 710 (1992), to the Siting Authority's gloss on the term "available." We apply that deferential standard only when the body interpreting the rule also is the body that promulgated it. *Gage v. City of Portland*, 319 Or

■ Finally, petitioners argue that the Siting Authority's reasons for rejecting petitioners' Proposed Condition 35 were not supported by substantial evidence. Here again, however, the Siting Authority accurately stated that other governmental agencies would address petitioners' concerns. The Siting Authority's statement was factually correct. We find no error.

For all the foregoing reasons, we conclude that the Siting Authority did not err in any of the respects claimed by petitioners in connection with its approval of the Rigdon site as a corrections facility. Its order approving that site therefore is affirmed.

The decision of the Corrections Facility Siting Authority is affirmed.

---

308, 314-17, 877 P2d 1187 (1994). In this case, we assess the correctness of the Siting Authority's interpretation from the standpoint of our own understanding of the criteria.