Argued and submitted April 14, reversed and remanded for reconsideration
June 25, petitioner's petition for reconsideration filed July 3 allowed by opinion
October 22, 1997
See 151 Or App 13 (1997)

Leile MONDAY,
*Petitioner,*

*v.*

EMPLOYMENT DEPARTMENT
and V.A. Medical Center,
*Respondents.*

(EAB No. 96-AB-541; CA A93157)

941 P2d 563

Jonathan M. Radmacher argued the cause for petitioner. With him on the brief was McEwen, Gisvold, Rankin, Carter & Streinz, LLP.

Jas. Adams, Assistant Attorney General, argued the cause for respondent Employment Department. With him on the brief were Hardy Myers, Attorney General, and Virginia L. Linder, Solicitor General.

Leigh E. Schwarz and Michael P. McCarthy filed the brief for respondent V.A. Medical Center.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DEITS, P. J.

**DEITS, P. J.**

Claimant seeks review of a decision of the Employment Appeals Board (EAB) in which it concluded that she was not entitled to unemployment benefits because she had violated her "last chance agreement" with the Veteran's Administration (employer), by failing to report to work on time on February 28, 1995. Claimant argues that EAB erred in a number of respects in reaching that conclusion. We remand for reconsideration.

Claimant worked for employer from April 10, 1979, until April 12, 1995, as a dental assistant. In April 1994, employer tested claimant for alcohol, with her consent, after other employees reported that she smelled of alcohol, had "glassy" eyes and that her speech was slurred. The test showed a blood/alcohol level of .20. Following that incident, claimant was reprimanded for being intoxicated on the job. On a number of subsequent occasions, claimant was sent by employer to the doctor as a result of concerns that she was intoxicated on the job and might present a safety problem to the patients at the veteran's hospital. She was also sent home at least once for that reason. Claimant eventually went on medical leave for a short period of time because of those incidents. When she returned to work, she was suspended for five days based on the previous occurrences. In early November 1994, claimant was absent without leave for one day. Later that month, other employees again reported that they could smell alcohol on claimant's breath and that she appeared "sluggish." This time, claimant refused to be tested for alcohol.

In December 1994, claimant was given a letter that informed her that her termination was imminent. She responded orally to the letter, admitting that she had a problem with alcohol and agreeing to obtain treatment. She then signed a "last chance agreement" in which she agreed, in addition to seeking treatment and submitting to blood alcohol tests and other alcohol-specific provisions, to the following provision:

> "Any further misconduct including, but not limited to, alcohol related misconduct or absence without leave occurring

during the 12 month last chance agreement period will be considered good cause to implement the removal action herewith held in abeyance."

Claimant was absent from work from February 21, 1995, through February 27, 1995. She called her supervisor at the beginning of each day to inform her that she would not be at work because her son had the flu and she could not take him to day care. Her supervisor told her that she would need verification from a doctor regarding her son's illness. On February 27, claimant again called her supervisor to tell her that she would be absent on that day. According to claimant, she told her supervisor that the reason that she was not able to come to work that day was that she was sick. The supervisor testified that claimant told her that her son was still sick. The supervisor said that she told claimant to find suitable accommodations for her son and to report to work within two hours. Claimant did not report for work that day.

The next day, claimant arrived at work 15 minutes late. She testified that the reason that she was late was that she had forgotten the note from her doctor concerning her illness and had to return home to get it because she knew that she would "get in trouble" if she came to work without it. She gave the supervisor two notes at that time. One note explained that her son had been sick with the flu through February 26. The other note stated that claimant had been ill on February 27. When the supervisor asked her why she had a note for herself, claimant took that note back and said that she had thought that that was what the supervisor wanted. It was employer's position before the ALJ that claimant was discharged because she was absent without leave on February 27 and because it considered claimant to be absent without leave on February 28 because she was 15 minutes late.

The ALJ concluded that claimant was discharged for misconduct connected with work. The ALJ determined that claimant violated her last chance agreement by not reporting to work on February 27 and by reporting to work late on February 28. Finally, the ALJ held that the absences were not "isolated instance[s] of poor judgment," nor were they the result of "good faith error."

On review, EAB concluded that the employer discharged claimant for misconduct connected to her work based only on her violation of the last chance agreement. It explained that "an employee who violates a reasonable last chance agreement commits misconduct connected with work." It determined that the condition of the last chance agreement requiring that claimant not be absent without leave was reasonable. EAB found that claimant was ill on February 27. However, it also found that claimant had been late for work without permission on February 28. It noted that the employer's attendance policy, of which claimant was aware, allowed employer to treat unauthorized tardiness as an absence without leave, which constituted a violation of the last chance agreement. EAB expressly did not determine whether claimant's tardiness was a result of a good faith error or an isolated instance of poor judgment because it concluded that "[t]he alcohol adjudication policy does not grant exceptions to a determination of misconduct[.]"

■  We first address the department's response to claimant's assignments of error, because our agreement with the department's position is dispositive of all of claimant's assignments of error. The department argues that because there is no evidence that claimant was absent from work or late reporting for work as a result of the use of alcohol, her entitlement to benefits must be considered under the General Misconduct Rule, OAR 471-30-038, rather than the Alcohol Adjudication Policy, OAR 471-30-140. We agree.

The Alcohol Adjudication Policy rule, OAR 471-30-140, applies when an employer discharges or suspends an employee for alcohol-related problems.[1] It provides:

"(1)  Purpose—Pursuant to ORS 657.176, *this rule establishes policy to be used when an employer discharges or suspends an employee for being under the influence of alcohol on the job or for being absent from work as the result of the use of alcohol.* This rule is an exception to OAR 471-30-038 and is intended to be used to determine whether or not

---

[1] In *Steele v. Employment Department,* 143 Or App 105, 923 P2d 1252, *rev allowed* 324 Or 487 (1996), we held part of the Alcohol Adjudication Policy to be invalid. Because we conclude that that policy is not applicable to the facts here, we do not reach the question of whether that policy *could* permissibly have the effect that EAB held it did.

a disqualification is to be imposed when the evidence presents issues addressed in this rule." (Emphasis supplied.)

■ Based on this record and on EAB's findings, it appears to be undisputed that claimant's absence from work on February 27 and tardiness on February 28 were unrelated to the use of alcohol. Accordingly, under the terms of the department's Alcohol Adjudication Policy rule, OAR 471-30-140 is inapplicable because claimant's absences were not "the result of the use of alcohol."[2] Consequently, the case must be analyzed under the General Misconduct Rule, OAR 471-30-038(3), which provides:

"(a)   As used in ORS 657.176(2)(a) and (b) a willful or wantonly negligent violation of the standards of behavior which an employer has the right to expect of an employee is misconduct. An act or series of actions that amount to a willful or wantonly negligent disregard of an employer's interest is misconduct.

"(b)   Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to illness or other physical or mental disabilities, or mere inefficiency resulting from lack of job skills or experience are not misconduct."

EAB did not analyze the case under the general misconduct rule. Consequently, it is necessary to remand the case to EAB for it to apply that rule in the first instance. *Andrews v. Tektronix, Inc.*, 323 Or 154, 166, 915 P2d 972 (1996); *City of Portland v. Employment Division*, 94 Or App 279, 282, 765 P2d 222 (1988). In view of our disposition, it is unnecessary to address claimant's other assignments of error.

Reversed and remanded for reconsideration.

---

[2] We give no deference to EAB's interpretation here because "[w]e apply that deferential standard only when the body interpreting the rule is also the body that promulgated it." *Dunning v. Corrections Facility Siting Authority*, 325 Or 269, 277 n 4, 935 P2d 1209 (1997); *Safeway Stores, Inc. v. Cornell*, 148 Or App 107, 939 P2d 99 (1997). *See also Trebesch v. Employment Division*, 300 Or 264, 710 P2d 136 (1985). The Employment Division, not EAB, promulgated OAR 471-30-140.