Argued and submitted March 3, reversed and remanded September 30, 1998

In the Matter of the Compensation of
Peter Gevers, Claimant.

Peter GEVERS,
*Petitioner,*

*v.*

ROADRUNNER CONSTRUCTION
and Liberty Northwest Insurance Corporation,
*Respondents.*

(WCB No. 95-10971; CA A99032)

965 P2d 1047

Robert Pardington argued the cause for petitioner. On the brief were Richard S. Springer and Pozzi Wilson Atchison.

Alexander D. Libmann argued the cause and filed the brief for respondents.

Before Riggs, Presiding Judge pro tempore, and Edmonds and Landau, Judges.

RIGGS, P. J. pro tempore.

**RIGGS, P. J. pro tempore.**

Claimant challenges an order of the Workers' Compensation Board (the board) denying his request for additional unscheduled permanent partial disability (PPD) for aggravation of his existing shoulder condition. We review for errors of law and substantial evidence, ORS 656.298(7); ORS 183.482(7) and (8), and reverse and remand.

We summarize the relevant facts from the board's order. Claimant suffered compensable injuries to both shoulders in a 1988 fall from a scaffold. Following multiple surgeries, claimant was declared medically stationary in 1990. A 1992 determination order awarded him 74 percent unscheduled PPD for his shoulders and 19 percent scheduled PPD for damage to his left arm.

In December 1992, insurer accepted a claim for aggravation of claimant's left shoulder condition. Claimant had two additional surgeries on that shoulder and again was declared medically stationary in November 1994. A determination award, issued in April 1995, awarded claimant temporary disability but no additional PPD for his left shoulder.

Claimant requested reconsideration and examination by a medical arbiter panel, as provided in ORS 656.268(7)(b). The panel issued the report of its examination of claimant on September 8, 1995. The panel found that claimant displayed "a marked decreased ability to repetitively use the left shoulder"[1] and further noted that claimant had suffered a significant loss of strength in his left shoulder. The report states: "The decreased strength is due to perijoint fibrosis and not to any one specific nerve muscle or tendon unit."[2]

---

[1] The board's order on appeal in this case erroneously reports the panel's finding concerning repetitive use of the left shoulder as "a marked *increase* in [claimant's] ability to repetitively use his left shoulder." (Emphasis added.) Because we reverse the board's decision on other grounds, we need not decide the effect, if any, of that error.

[2] We note that there is a discrepancy between the copy of the medical arbiter's report that was designated as an exhibit and the copies of the report that appear in the parties' briefs. The latter contains an additional sentence after the language quoted above. That sentence, which does not appear in the exhibit copy, reads, "There is atrophy of the infra and supraspinatus muscles and probable disruption

Based upon that report, the department issued an order on reconsideration affirming the determination order. Claimant requested a hearing, and, on February 20, 1996, an administrative law judge (ALJ) issued an order affirming the order on reconsideration. Claimant appealed the ALJ's order to the board, and on August 1, 1997, the board issued an order on review affirming that order.

In rejecting claimant's request for additional PPD, the board focused on the medical arbiters' finding that claimant's loss of shoulder strength "was not due to any one specific nerve muscle or tendon unit." While acknowledging claimant's "decreased strength" and "increase in impairment," the board concluded that claimant's inability to attribute his loss of strength to damage to a particular nerve made his condition unratable. The board's order on review states, in pertinent part:

> "[W]e are unwilling to infer an injury to each named peripheral nerve * * * (or to any specific peripheral nerve that innervates the muscles of the left shoulder) in the absence of supporting medical evidence. * * * Here, the record establishes only that claimant's decreased strength is due to 'perijoint fibrosis.' We cannot logically infer from the arbiters' report any injury to a specific named peripheral nerve or any injury to a specific nerve muscle or tendon unit. Consequently, we conclude that claimant's decreased left shoulder strength is not ratable under the applicable standards."

Claimant argued to the ALJ and to the board that his condition was ratable under either of the two board rules addressing loss of shoulder strength that were in effect at the time, *former* OAR 436-35-350(3) and (5) (1993).[3] As noted

---

of the rotator cuff." The parties do not draw our attention to the discrepancy, nor is it central to their arguments. Because it is not part of the copy of the medical arbiter's report in the record, we decline to consider the impact, if any, of the additional text. We note, however, that it does not appear to contradict our analysis or conclusion in this case.

[3] *Former* OAR 436-35-330(19) (1993) provided:

"For injuries resulting in loss of strength of the shoulder refer to OAR 436-35-350(3) and (5)."

*Former* OAR 436-35-350(3) provided, in part:

"Injuries to a unilateral specific named peripheral nerve with resultant loss of strength shall be determined based upon a preponderance of medical

above, the board's order contains a finding that claimant has not suffered damage to a specific shoulder nerve. On review, claimant does not assign error to that finding, although subsection (3) requires a showing of injury to a "specific named nerve." However, he contends that the board erred in rejecting his claim under *former* OAR 436-35-350(5), because, in his view, that subsection allows recovery even absent a showing of damage to a specific nerve. Claimant argues that the board incorrectly addressed his claim under subsection (5) together with his claim under subsection (3) and erroneously rejected *both* on the ground that he had failed to prove damage to a particular nerve. Respondents counter that the board's ruling was correct because subsection (5), like subsection (3), requires proof of nerve damage.

██ We agree with claimant that *former* OAR 436-35-350(5) does not require a showing of nerve damage for a loss of shoulder strength to be ratable.[4] In interpreting administrative rules, we apply the same rules that apply to the construction of statutes. *Perlenfein and Perlenfein,* 316 Or 16, 20, 848 P2d 604 (1993); *Liberty Northwest Ins. Corp. v. Jensen,* 150 Or App 548, 552, 946 P2d 689 (1997). Our first level of inquiry into the meaning of statutes and rules is examination of text and context. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 610, 859 P2d 1143 (1993). Here, the text of subsection (5) makes no mention of damage to specific nerves. Rather, the subsection refers to "loss of strength due to muscle loss or damage to the musculotendinous unit" and states that such loss is to be rated "*as if* the nerve supplying that muscle or muscle group were impaired." (Emphasis added.) Rating loss of strength due to muscle loss *as if* a nerve

---

opinion that reports loss of strength * * * and establishes which specific named peripheral nerve is involved."

*Former* OAR 436-35-350(5) provided:

"Loss of strength due to muscle loss or disruption of the musculotendinous unit shall be valued as if the nerve supplying that muscle or muscle group were impaired."

[4] We owe no deference to the board's interpretation of the rule, because "[w]e apply that deferential standard only when the body interpreting the rule also is the body that promulgated it." *Dunning v. Corrections Facility Siting Authority,* 325 Or 269, 277 n 4, 935 P2d 1209 (1997); *see also Safeway Stores, Inc. v. Cornell,* 148 Or App 107, 111, 939 P2d 99 (1997). The department, not the board, promulgated *former* OAR 436-35-350(5).

were damaged demonstrates that subsection (5) was intended to apply in cases where the nerve is not *in fact* damaged. The text of the rule unambiguously refers to muscle and tendon-related losses of strength and offers no support for respondents' contention that claimant must show damage to a specific nerve for his condition to be ratable under subsection (5).

Statutory context also supports claimant's reading of subsection (5). Our inquiry into context includes review of related rules or statutes. *PGE*, 317 Or at 611. Here, we need look no further than *former* OAR 436-35-350(3) to find support for claimant's position. That subsection specifically refers to claims arising from "injuries to a unilateral specific named nerve with resultant loss of strength." Taken together with subsection (5), that rule establishes a framework for analyzing loss of shoulder strength: Losses related to nerve injury are rated under subsection (3), while losses related to muscle loss or disruption of a musculotendinous unit are rated under subsection (5). Respondents' contention that subsection (5) requires a showing of damage to a specific nerve would turn that subsection into a virtual duplicate of subsection (3). Respondents have identified no factual situation in which subsection (5) would have independent effect under their reading, and we can think of none.

■   The text and context of *former* OAR 436-35-350(5) demonstrate that a claimant need not show damage to a particular nerve for loss of shoulder strength to be ratable. The board appears to have rejected claimant's request for additional PPD under subsection (5) on the basis of his failure to show such damage, and, accordingly, the board erred.[5] We

---

[5] The board's order does state that the board "cannot logically infer from the arbiters' report any injury to a named specific peripheral nerve or any *injury to a specific nerve muscle or tendon unit*." (Emphasis added.) It might be argued that the quoted passage demonstrates that the board in fact considered and rejected claimant's contention that his loss of strength was due to muscle or tendon damage, without requiring a connection to specified nerve. The report refers to the lack of evidence of "injury" to muscle; however, *former* OAR 436-35-350(5) does not require a showing of such injury but, rather, a showing of "muscle loss." Accordingly, we are left to conclude that the board rejected claimant's request under the mistaken belief that *former* subsection (5) required a showing of injury to a specific nerve or nerve-muscle unit. Our conclusion is bolstered by the fact that the board was affirming the ALJ's hearing order, which unambiguously applied the requirement of nerve injury to claimant's request under both subsection (3) and subsection

remand to the board with instructions to consider whether claimant's decrease in shoulder strength is due to "muscle loss or disruption of the musculotendinous unit" and, if so, to value the loss of strength under *former* OAR 436-35-350(5).

■     Further, if the board determines that claimant's loss of strength is *not* ratable under that subsection, then ORS 656.726(3)(f)(C) requires the board to remand the case to the director for adoption of a temporary rule under which to assess claimant's increased disability. ORS 656.726(3)(f)(C) provides, in part:

> "When, upon reconsideration of a determination order or notice of closure pursuant to ORS 656.268, it is found that the worker's disability is not addressed by the standards adopted pursuant to this paragraph, notwithstanding ORS 656.268, *the director shall stay further proceedings on the reconsideration of the claim and shall adopt temporary rules amending the standards to accommodate the worker's impairment.*" (Emphasis added.)

Both the ALJ and the board appear to have been under the impression that ORS 656.726(3)(f)(C) requires a claimant to request adoption of a temporary rule; the board's order, for example, states "[a]s the ALJ noted, the record does not indicate that claimant requested the adoption of a temporary rule addressing loss of strength attributable to formation of fibrous tissues."

■     Claimant is not required to request a temporary rule under the circumstances outlined in ORS 656.726(3)(f)(C). As we previously have stated, that statute unambiguously requires the director to adopt a temporary rule in cases where "it is found" that the claimant's disability is not addressed in the standards, and the board has implicit authority to remand a case to the director for the adoption of such a rule. *Gallino v. Courtesy Pontiac-Buick-GMC*, 124 Or App 538, 541, 863 P2d 530 (1993). The requirement that the director "shall" adopt such a rule makes clear that the rulemaking process is not undertaken at the director's discretion. *Id.*; *see also Shubert v. Blue Chips*, 151 Or App 710, 714, 951 P2d 172 (1997); *Simon v. PIE Nationwide, Inc.*, 142 Or App

---

(5), stating "[t]he arbiter's finding of loss of strength is based not upon a named spinal nerve root, peripheral nerve or plexus * * *."

411, 416, 921 P2d 421 (1996). Nothing in the statute suggests that the director may stay the mandatory process of promulgating a temporary rule until a claimant requests it, or avoid the process altogether if the claimant never does so. Mindful of our mandate "not to insert what has been omitted" when construing statutes, ORS 174.010, we decline to read into ORS 656.726(3)(f)(C) the requirement that a claimant must request a temporary rule to trigger the director's duty to adopt such a rule.

Reversed and remanded.