Argued and submitted January 4, certified question answered April 19, 2001

Kevin Michael MATTHEWS,
*Plaintiff,*

*v.*

OREGON STATE BOARD OF
HIGHER EDUCATION,
acting by and through
the University of Oregon, and David Frohnmayer,
John Moseley and Lorraine Davis
in their official and individual capacities,
*Defendants.*

(USDC CV98-06119-MRH; USCA 98-36218; SC S47802)

22 P3d 754

Donna Meredith Matthews, Eugene, filed the brief and argued the cause for plaintiff.

Richard Wasserman, Assistant Attorney General, Salem, argued the cause for defendants. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

DE MUNIZ, J.

**DE MUNIZ, J.**

This court accepted certification of the following question from the United States Court of Appeals for the Ninth Circuit.

"Whether under Oregon law the President of the University of Oregon may, without explicit statutory or regulatory authorization, delegate informally the authority to make final determinations regarding the denial of indefinite tenure."

*See* ORS 28.200 *et seq.* (describing certified question process); ORAP 12.20 (prescribing procedures for consideration of certified questions); *see also Western Helicopter Services v. Rogerson Aircraft,* 311 Or 361, 811 P2d 627 (1991) (discussing factors court considers in exercising discretion to accept certified questions). For the reasons that follow, we conclude that the President of the University of Oregon (president) has statutory authorization to delegate informally final determinations regarding the denial of indefinite tenure.

We recite the factual and procedural history from the Ninth Circuit's certification order:

"In 1991, Kevin Matthews became an 'annual tenure' professor in the University's architecture department. In 1996, his sixth consecutive year in that position, Matthews applied to the University for a promotion to indefinte tenure. According to his complaint, Matthews previously had publicly criticized University officials for allegedly misusing and misallocating University money, and Matthews allegedly had been reprimanded for his accusations.

"In April 1997, in apparent recognition of the controversy surrounding Matthews's tenure bid, two professors wrote to University President David Frohnmayer to support Matthews's application and to request a meeting. Frohnmayer refused the meeting, writing that for him to 'interject [himself] at this point would not be appropriate.' He thus left the tenure determination to Provost John Moseley.[1] By letter in June 1997, Provost Moseley, followed by Vice Provost Lorraine Davis, informed Matthews of Moseley's final decision to deny indefinite tenure.

_____

[1] By leaving the decision up to the provost, the president affirmed a long-standing practice at the University. In the words of the Ninth Circuit:

"Subsequently, Matthews brought an action in the Circuit Court of the State of Oregon (Lane County) and alleged that the president's failure to make the final tenure decision gave rise to claims for deprivation of due process pursuant to 42 U.S.C. § 1983 and for breach of contract under Oregon law. The defendants successfully removed to federal district court, which dismissed the case. The district court held that the president's chief executive authority permits an informal delegation to the provost of the power to make final decisions regarding indefinite tenure. [The Ninth Circuit] heard argument and determined that the presence or absence of authority to make such a delegation informally presents an important and unresolved state law issue that is determinative of the cause."

*Matthews v. Oregon State Board of Higher Education*, 220 F3d 1165, 1166 (9th Cir 2000).

The question certified to this court by the Ninth Circuit assumes that the president lacks explicit statutory authorization to delegate informally the authority to make final determinations regarding the denial of indefinite tenure. However, in this court's view, the question actually implicates two statutory grants of authority: ORS 351.070, which grants rulemaking authority to the State Board of Higher Education (board); and ORS 352.004, which authorizes the president to control the University's practical affairs.

Matthews contends that the president's authority to make final determinations regarding the denial of indefinite tenure flows through the board under ORS 351.070. That statute provides, in part:

"(3) The board may, for each institution under its control:

---

"[D]efendants do not explain how the delegation of authority from the president to the provost came about, and there is no administrative regulation that specifically sanctions or explains that delegation. The record, however, shows that the provost has had this authority since before [the current president's administration]."

*Matthews v. Oregon State Board of Higher Education*, 220 F3d 1165, 1167 (9th Cir 2000). For example, the record includes the University of Oregon, Office of Academic Affairs, *Faculty Handbook*, 81 (10th ed 1996), which provides, in part, that the provost is "the only officer in the University * * * who may award tenure." Defendants acknowledge that the Faculty Handbook is an informal internal document and do not rely on it as authority for the provost's actions. *Id.*

"(a)  Appoint and employ a president and the requisite number of professors, teachers and employees, and prescribe their compensation and tenure of office or employment."

Matthews apparently accepts that the president informally has delegated the authority to make final determinations regarding the denial of indefinite tenure. *See* 332 Or at 33-34 n 1. Matthews contends, however, that the delegation of that authority violated the Administrative Procedures Act (APA), ORS 183.310 to ORS 183.550, because one of the board's administrative rules requires the president to award indefinite tenure. Matthews interprets that rule to mean that the president must consider all tenure applications. Thus, Matthews argues, the delegation by the president amended a prior rule, an action that requires formal rulemaking under the APA. *See* ORS 183.310(8) ("rule" includes amendment of prior rule). Specifically, Matthews relies on OAR 580-021-0105(5), which provides:

"Indefinite tenure shall be awarded to faculty of demonstrated professional competence *by the president* under terms and conditions set forth in the Board's *Administrative Rules* and policies and in applicable institutional rules."

(Italics in original; underscoring added.)

Defendants contend that the president's tenure decision-making authority flows directly from ORS 352.004. That statute provides, in part:

"Subject to the supervision of the board, the president of the University has authority to control and give general directions to the practical affairs of the school."

Matthews's position appears to be that any authority that the president has to make tenure-related decisions under ORS 352.004 is superceded by administrative rules adopted pursuant to the board's rulemaking authority under ORS 351.070(1). If, however, the president's authority to deny tenure does flow from ORS 352.004, then Matthews argues that formal rulemaking still was required to delegate that authority and that has not occurred.

In response to Matthews's principal argument, defendants point out that OAR 580-021-0105(5) requires the president only to *award* indefinite tenure under certain specified circumstances, but does not require the president to *deny* indefinite tenure. Because no rule requires the president to deny indefinite tenure, defendants argue that such decisions should be regarded as a "practical affair" of the school, falling squarely within the president's authority under ORS 352.004.

■ We begin by examining the board's regulatory scheme in more detail. The board has adopted rules for, *inter alia*, awarding indefinite tenure, as well as for terminating faculty with indefinite tenure and faculty without indefinite tenure. *See generally* OAR ch 580, div 21 (establishing "Conditions of Service" for University staff). For example, OAR 580-021-0120 provides:

> "A full-time faculty member on annual tenure for a sixth consecutive year shall be awarded indefinite tenure commencing the seventh consecutive year or given *notice of termination* effective at the end of the seventh year."

(Emphasis added.) Thus, a faculty member in Matthews's position, who has completed six consecutive years in an annual tenure position and who is not awarded indefinite tenure, must receive notice of termination effective at the end of the seventh year. The applicable requirement for terminating a faculty member holding annual tenure is "[a]ppropriate notice of termination * * * as set forth in OAR 580-021-0305." OAR 580-021-0315. OAR 580-021-0305(1) provides, in part, that if:

> "an annual tenure appointment * * * is not to be renewed * * * timely notice of non-renewal shall be given in writing as follows: * * * in the third and subsequent years, at least 12 months' notice[.]"

Matthews argues that the provost's letter, though timely, failed to satisfy the termination notice requirement, because the president did not make the decision to deny indefinite tenure. According to Matthews, the president must consider all applications for indefinite tenure, because OAR 580-021-0105(5) provides that "[i]ndefinite tenure shall be

awarded * * * by the president[.]"[2] Matthews suggests that the president's informal delegation of tenure-related decisions is invalid because the board formally delegated such decisions to the president, and the president's "subdelegation" of that authority amended the board's prior rule, an action that requires formal rulemaking under the APA. ORS 183.310(8).

The problem for Matthews is that OAR 580-021-0105(5) does not require specifically the president to deny indefinite tenure. Moreover, Matthews does not explain why this court must interpret that rule as requiring the president to deny indefinite tenure. Because no rule requires the president to deny indefinite tenure, an informal delegation of the president's authority to make such decisions does not amend a prior rule, and the APA, therefore, does not apply. *See* ORS 183.310(8) ("rule" includes amendment of prior rule).

In the absence of a board rule that directs the president to deny indefinite tenure, we are persuaded that such decisions are a practical affair of the University, governed by ORS 352.004. In that event, Matthews argues that the delegation of the president's authority to deny tenure is subject to the APA as an agency "directive * * * of general applicability" under ORS 183.310(8). However, ORS 183.310(8) provides that "rule" does not include:

"(a)   * * * internal management directives, regulations or statements which do not substantially affect the interests of the public:

"* * * * *

"(B)   Within an agency, between its officers or between employees."

Matthews does not assert that the delegation of tenure decision-making authority "substantially affect[s] the interests of the public." Rather, Matthews's argument appears to be that the internal management directive (IMD) exception is not applicable because the University did not promulgate an IMD regarding the denial of indefinite tenure.

---

[2] We do not consider defendant's argument that the president's role in *awarding* tenure is ministerial, because the question before us concerns a *denial* of indefinite tenure.

Notwithstanding the fact that the University publishes some IMDs, Matthews points to no legal authority, and we find none, that requires *any* formality when the University issues an IMD. Indeed, the whole point of the IMD exception is to avoid the burden of rulemaking formalities when the public's interest is not at stake.[3]

■ ■ To summarize, ORS 351.070(3) grants the board rulemaking authority, and ORS 352.004 authorizes the president to control the University's practical affairs. A board rule requires the president to award tenure, but no rule requires the president to deny tenure. Reading the two statutes together, we conclude that, in the absence of an explicit board rule to the contrary, decisions to deny indefinite tenure are a practical affair of the school, and that the authority to make such decisions resides with the president under ORS 352.004. Formal APA rulemaking is not required for the president to delegate that authority because: (1) such a delegation amends no prior rule; and (2) the public's interest is not substantially affected. Beyond the requirements of the APA, we are aware of "no general legal proscription against the retransmission of authority by government agencies." *Warren v. Marion County et al*, 222 Or 307, 320, 353 P2d 257 (1960). Accordingly, we answer the certified question in the affirmative. The president may delegate informally the authority to make final determinations regarding the denial of indefinite tenure to the provost.

Certified question answered.

---

[3] *See Rogue Flyfishers v. Water Policy Review Bd.*, 62 Or App 412, 416-17, 660 P2d 1089 (1983) (discussing legislative history of IMD exception).